**UNITED STATES of America, Respondent–Appellee,**

v.

**Steven CHESTARO, Petitioner– Defendant–Appellant.**

**Docket Nos. 98–1107, 98–2784**

United States Court of Appeals, Second Circuit.

Argued: June 1, 1999

Decided: Dec. 16, 1999

Alexander E. Eisemann, New York, New York, for Petitioner–Defendant–Appellant.

Dan Himmelfarb, Assistant United States Attorney (Ira M. Feinberg, Assistant United States Attorney, on the brief), Mary Jo White, United States Attorney for the Southern District of New York, New York, New York, for Respondent–Appellee.

Before: MESKILL and WALKER, Circuit Judges, and TRAGER, District Judge.*

JOHN M. WALKER, Jr., Circuit Judge:

Petitioner-appellant Steven Chestaro appeals from the February 23, 1998 judgment of conviction for assaulting a federal officer entered in the United States District Court for the Southern District of New York (Lewis A. Kaplan, *District Judge* ). Chestaro appeals his conviction, his sentence, and the district court's subsequent denial of his motion to vacate his conviction pursuant to 28 U.S.C. § 2255. We affirm.

* The Honorable David G. Trager, of the United States District Court for the Eastern District of New York, sitting by designation.

## BACKGROUND

The government charged in one count that on the evening of February 19, 1997, Steven Chestaro assaulted, resisted, and interfered with three United States Postal Police Officers in the performance of their duties, in violation of 18 U.S.C. § 111. The government alleged that, in the course of his resistance, Chestaro used a "deadly and dangerous weapon," a box-cutter, within the meaning of 18 U.S.C. § 111(b), which provides an "enhanced penalty" where the assailant "uses a deadly or dangerous weapon ... or inflicts bodily injury." The defendant was tried twice because the first trial resulted in a deadlocked jury. It will be necessary to discuss aspects of both trials in this opinion.

The evidence at both trials consisted of the box-cutter and the testimony of the three officers. The officers testified that, just before midnight on February 19, they saw Chestaro smoking a cigarette in the lobby of the Morgan General Mail Facility in midtown Manhattan. The facility is not a post office and is not open to the public. The officers walked up to Chestaro and determined that he was not employed by the postal service. One of the officers told him that he was not allowed to be there and that smoking in the building was prohibited. Chestaro left the building.

Less than five minutes later, Chestaro reappeared in the building and began cursing at the officers. Two of the officers then took Chestaro by the arms and escorted him outside. The third officer followed. Once all four were outside, the three officers turned away and started to walk down the sidewalk. One officer then saw Chestaro pull a box-cutter out of his pocket. The officer called out that Chestaro had a knife.

As soon as Chestaro had removed the box-cutter from his pocket, he began to

swing it at the officers, but before he could move his arm very far, one of them grabbed Chestaro's wrist. After a brief struggle, the officers subdued, handcuffed, and arrested him. Each officer received a minor injury as a result of the altercation.

Chestaro took the stand. He testified that he had entered the postal building at 5:30 p.m.; that a mailman had punched him in the face; that he had been escorted out of the building and then thrown to the ground and beaten. He denied that he had hit any of the police officers or cut them with a box-cutter.

At the first trial, the district court charged the jury that it should return a verdict of guilty on the charged offense if it found that the government had proven five elements beyond a reasonable doubt:

> (1) that at the time of the incident, the police officers were officers or employees of the United States;
>
> (2) that the defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with the officers;
>
> (3) that he did these acts willfully;
>
> (4) that at the time of the incident, the officers were engaged in the performance of their duties; and
>
> (5) that the defendant used a deadly or dangerous weapon or inflicted bodily injury.

At the government's request, and without objection from the defendant, the district court also charged that, if the jury found that the government had proven the first four elements of the crime charged but not the fifth, it could convict Chestaro of a lesser included offense. *See Chestaro v. United States*, 17 F.Supp.2d 242, 243 (S.D.N.Y.1998).

After several hours of deliberation and an *Allen* charge, the jury announced that it was "hopelessly deadlocked." At defense counsel's suggestion, the district court asked the jury for a partial verdict. Thereupon the jury returned with a partial verdict acquitting Chestaro on the charged offense. The jury remained deadlocked on the lesser included offense, and the district court declared a mistrial on that offense without objection from either party.

Three months later, the case was re-tried. The offense charged was the same as the lesser included offense at the first trial. The district court's jury instructions closely tracked its previous charge, except that it excluded the fifth element of the earlier charged offense—using a deadly or dangerous weapon or inflicting bodily injury. The district court also charged the jury that it could convict on a lesser included offense if it found "that the government has not proved the second element of the offense, that is, that they've not proved what I've just described to you as forcible conduct."[1] After deliberating for about two hours, the jury returned a guilty verdict on the charged offense.

At his sentencing in February 1998, Chestaro was represented by appellate counsel. His trial counsel, whom Chestaro had dismissed just before sentencing, was

---

1. The district court explained that the lesser included offense here

 is what is known as simple assault. Simple assault, for the purposes of this case, involves all of the elements that I just described to you with one exception; that is, the element of forcible conduct is different.... [S]imple assault requires only that the defendant willfully attempted or threatened forcibly to inflict injury on another person with the apparent present ability to do so, in such a way that it would cause a reasonable person to fear that the defendant would inflict bodily harm.

 In order to convict the defendant on a lesser included offense of simple assault it,

 therefore, is not necessary for the government to prove that the defendant actually struck or beat anyone. Thus, if you find beyond a reasonable doubt that the defendant willfully attempted, forcibly, to inflict injury or to inflict bodily injury on any of [the officers], and that he had the apparent ability to do so in a way that would cause a reasonable person to fear that the defendant would inflict immediate bodily harm, and you find that the government had proved beyond a reasonable doubt the other three elements of the offense ... you should find the defendant guilty of simple assault.

also present. Defense counsel and the government disagreed as to whether the applicable sentencing guideline was the one pertaining to aggravated assault, U.S.S.G. § 2A2.2, or obstructing or impeding officers, U.S.S.G. § 2A2.4. Relying on *United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997), Judge Kaplan ruled that § 2A2.2 applied, notwithstanding the jury's verdict at the first trial. Judge Kaplan found by clear and convincing evidence that the defendant pulled a box-cutter on the officers and swung it at them with the intent to do bodily harm. The district judge sentenced Chestaro to a 33-month term of imprisonment.

Chestaro filed a timely appeal in this court, but then withdrew it to move in the district court under 28 U.S.C. § 2255. Chestaro's § 2255 motion argued that: (1) he was subjected to double jeopardy, in violation of the Fifth Amendment; (2) trial counsel was ineffective; and (3) Chestaro's conviction was unlawful because the government wrongfully charged as an element of the offense what should have been only a sentencing enhancement. This last claim was raised for the first time in the § 2255 motion. The district court denied the § 2255 motion, *see Chestaro*, 17 F.Supp.2d 242, but granted a certificate of appealability as to the double jeopardy issue.

Chestaro appealed from the district court's denial of his § 2255 motion. This appeal has been consolidated with his direct appeal from conviction. In the consolidated appeal, Chestaro contends that (1) § 111 is unconstitutionally vague; (2) his retrial violated the Double Jeopardy Clause; (3) trial counsel was ineffective; (4) the district court erred at sentencing; (5) the charge that remained after the first trial constituted only a misdemeanor; and (6) trial counsel's consent to a mistrial was limited to a retrial on a misdemeanor count. We find no merit in these arguments and affirm.

## DISCUSSION

Several of Chestaro's arguments require us to examine the statute under which he was charged.

18 U.S.C. § 111, in pertinent part, provides:

(a) *In general.*—Whoever—

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; ...

. . .

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than three years, or both.

(b) *Enhanced penalty.*—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 111. The language in subsection (a) providing a lesser penalty for "simple assault" was added to the statute in 1994 as part of the Violent Crime Control Act of 1994; subsection (b) was added in 1988 as part of the Anti–Drug Abuse Act of 1988 and amended in 1994.

### I. *Unconstitutional Vagueness*

Chestaro argues that § 111 is fatally vague because it does not cleary establish the applicable penalty for the specific conduct said to violate the statute. *See United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). He claims that, while the statute is clear as to what types of behavior are prohibited, it is impossible for a person of ordinary intelligence to distinguish between simple assault, for which a maximum penalty of one

year is prescribed, and "all other" assaults, for which the maximum term is three years.

Chestaro's argument has some appeal, but is ultimately unavailing. The statute does not define "simple assault" and one can determine what constitutes "all other" assaults only through the process of elimination. Nevertheless, some ambiguity in a statute's meaning is constitutionally tolerable. The Supreme Court has stated that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Chapman v. United States,* 500 U.S. 453, 464, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (internal quotation marks and citation omitted). This holds for the penalty provisions of a criminal statute as well as for provisions proscribing conduct. *See United States v. Evans,* 333 U.S. 483, 486, 68 S.Ct. 634, 92 L.Ed. 823 (1948).

The term "simple assault" is not defined anywhere in the federal criminal code; however, it does appear in another provision of the code that has been the subject of considerable judicial interpretation. The statute proscribing assaults within the special maritime and territorial jurisdiction of the United States, 18 U.S.C. § 113,[2] includes a reduced penalty for simple assault in subsection (5), which has been held to "embrace the common law meaning of that term." *United States v. Stewart,* 568 F.2d 501, 504 (6th Cir.1978); *see United States v. Estrada–Fernandez,* 150 F.3d 491, 494 n. 1 (5th Cir.1998); *United States v. Juvenile Male,* 930 F.2d 727, 728 (9th Cir.1991); *see also United States v. Shabani,* 513 U.S. 10, 13, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994) (following "the settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms"). The common-law meaning of "simple assault" is not disputed by either Chestaro or the government; it is a crime "committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *United States v. Johnson,* 637 F.2d 1224, 1242 n. 26 (9th Cir.1980) (internal quotation marks and citation omitted). Because Congress was silent as to the meaning of "simple assault" when it adopted the 1994 amendments to § 111, it may safely be assumed, as Chestaro concedes, that Congress intended to adopt the term as used in § 113, which in turn has been construed, appropriately in our view, to incorporate the common-law definition.

Chestaro argues in his brief that incorporating the common-law definition of simple assault does not save the statute, however, because the common-law definition of simple assault is ambiguous and still does not provide a principled way to distinguish between "simple assault" and "all other cases" of non-injurious forcible conduct.

---

**2.** Section 113 creates seven categories of assault of which the following are roughly equivalent to the categories described in § 111:

 (a) Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

 . . .

 (3) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by fine under this title or imprisonment for not more than ten years, or both.

 (4) Assault by striking, beating, or wounding, by fine under this title or imprisonment for not more than six months, or both.

 (5) Simple assault, by fine under this title or imprisonment for not more than six months, or both, or if the victim of the assault is an individual who has not attained the age of 16 years, by fine under this title or imprisonment for not more than 1 year, or both.

 (6) Assault resulting in serious bodily injury, by a fine under this title or imprisonment for not more than ten years, or both.

 . . .

18 U.S.C. § 113.

He contends that § 113 does not suffer from the same constitutional infirmity because, unlike § 111, "it does not have a vague and ambiguous 'all-other-cases' clause," but instead explicitly distinguishes between "[s]imple assault" and cases involving "[a]ssault by striking, beating, or wounding." 18 U.S.C. § 113(a)(4), (5).

█ The district court accepted the government's argument, repeated on appeal, that for practical purposes § 111 creates three distinct categories of conduct: (1) simple assault, which, in accord with the common-law definition, does not involve touching; (2) "all other cases," meaning assault that does involve contact but does not result in bodily injury or involve a weapon; and (3) assaults resulting in bodily injury or involving a weapon. We think that this is a reasonable construction of the statute, and one that gives effect to every part of it. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (noting that "courts should disfavor interpretations that render language superfluous"). Unlike the statute in *Evans*, § 111 does not invite the court to speculate as to what Congress might have intended. In *Evans*, the Court struck down a statute that did not set forth a penalty for concealing or harboring aliens, as distinct from landing and bringing them into the country. The Court found that the statute impermissibly invited the Court "to proceed in an essentially legislative manner for the definition and specification of the criminal acts, in order to make a judicial determination of the scope and character of the penalty." *Evans*, 333 U.S. at 490–91, 68 S.Ct. 634. By contrast, the intent of Congress in enacting § 111 is readily ascertainable, even if the statute's language could have been more explicit. The district court's tripartite definition of the penalties for the three kinds of assault set forth in § 111 is sufficient to meet Chestaro's vagueness challenge.

Unable to cite any case holding that the common-law definition of simple assault includes non-injurious contact, defendant cites a decision of the D.C. Circuit, *United States v. Duran*, 96 F.3d 1495 (D.C.Cir. 1996), that, incorrectly in our view, relied on the Model Penal Code to define simple assault in § 111 as including conduct that results in bodily injury, *see id.* at 1511. In any event, the *Duran* court's discussion of simple assault was dictum because the defendant's conduct involved physical conduct and thus constituted assault under any definition. We do not believe *Duran* to be persuasive authority for the proposition that "simple assault," as used in § 111, is unconstitutionally vague.

## II. *Double Jeopardy*

█ Next, we consider Chestaro's contention that his retrial subjected him to double jeopardy. The Double Jeopardy Clause guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Clause provides three fundamental protections:

> "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the offense after conviction. And it protects against multiple punishment for the same offense."

*United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir.1982) (quoting *United States v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975)).

Chestaro's argument, reduced to its essence, is that § 111 defines only one offense with three separate penalty provisions; therefore, once the jury at the first trial acquitted him of the most aggravated form of behavior prohibited by the statute, any subsequent retrial constituted an impermissible second trial for the same offense. This argument requires us to decide two related issues: (1) the number of offenses defined by § 111; and (2) the double jeopardy implications of the jury's verdict at the first trial.

### A. Construction of § 111

We have not previously decided whether § 111(b) defines a separate offense or is simply a penalty enhancement provision. A few circuit courts that have considered the question have held the latter. *See United States v. Segien*, 114 F.3d 1014, 1020 (10th Cir.1997); *United States v. Young*, 936 F.2d 1050, 1055 (9th Cir.1991). But other courts, including this one, have assumed without deciding that § 111 assault with a dangerous weapon could be charged as a distinct offense, *see United States v. Hudson*, 972 F.2d 504, 505 (2d Cir.1992); *United States v. Reid*, 517 F.2d 953, 965 (2d Cir.1975); *United States v. Bey*, 667 F.2d 7, 11 (5th Cir.1982), and have interpreted similar provisions of other statutes to constitute separate offenses rather than sentencing enhancements, *see Grimes v. United States*, 607 F.2d 6, 12–15 (2d Cir.1979) (interpreting federal bank robbery statute provision providing for most severe penalty where the offense put a person's life in jeopardy or involved the use of a dangerous weapon).

The Supreme Court has recently addressed this subject in two cases: *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 1226, 140 L.Ed.2d 350 (1998), where the Court found a sentencing enhancement, and *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 1221–22, 143 L.Ed.2d 311 (1999), where the Court found a separate offense. In the first case, the statutory provision increased the penalty for unlawful re-entry to the United States for aliens who had been deported subsequent to conviction of a felony. *See Almendarez–Torres*, 523 U.S. 224, 118 S.Ct. at 1222. In the second case, the federal carjacking statute authorized higher penalties, including death, where the crime resulted in serious bodily injury or death. *See Jones*, 526 U.S. 227, 119 S.Ct. at 1218. Distinguishing the earlier case, the *Jones* Court observed that the enhancement provision in *Almendarez–Torres* revolved around the defendant's recidivism, a factor traditionally considered by courts at sentencing. *See Jones*, 526 U.S. 227, 119 S.Ct. at 1227.

We believe that *Jones* rather than *Almendarez–Torres* controls this case. As the Court noted in *Jones*, recidivism is unique as a sentencing factor in that "unlike virtually any other consideration to enlarge the possible penalty for an offense, ... a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." *Jones*, 526 U.S. 227, 119 S.Ct. at 1227. Accordingly, the *Jones* Court explained that *Almendarez–Torres* "stands for the proposition that not every fact expanding a penalty range must be stated in a felony indictment, the precise holding being that recidivism increasing the maximum penalty need not be so charged." *Id.* 523 U.S. 224, 118 S.Ct. at 1226–27; *see also United States v. Baldwin*, 186 F.3d 99, 101 (2d Cir.1999) (per curiam) ("Whatever considerations may distinguish the class of offense elements, on the one hand, from the class of sentencing factors, on the other, it is clear that ... recidivism ... is relevant only to sentencing.").

■ Applying *Jones*, we hold that § 111(b) defines a separate offense rather than simply a sentencing enhancement. Although the language of § 111(b), which includes the term "enhanced penalty," suggests otherwise, *see Segien*, 114 F.3d at 1018 (the fact that § 111(b) is set off and separately titled "enhanced penalty" in bold print is particularly persuasive evidence of Congress's intent to create a sentencing enhancement rather than a separate offense), the text of such a provision is not dispositive. *See Jones*, 526 U.S. 227, 119 S.Ct. at 1219 (noting that the statute at issue "at first glance has a look to it suggesting that the numbered subsections are only sentencing provisions"); *Baldwin*, 186 F.3d at 101. As in *Jones*, the sentencing provisions of § 111 "not only provide for steeply higher penalties," *Jones*, 526 U.S. 227, 119 S.Ct. at 1219 (a maximum of ten years as opposed to three years or one

year), but also "condition them on further facts [such as injury] that seem quite as important as the elements in the principal paragraph." *Id.* 526 U.S. 227, 119 S.Ct. at 1216. These facts, including contact with the victim, bodily injury, and the use of a dangerous weapon, are of the type that the states ,and the federal government traditionally have considered elements of an offense rather than sentencing factors. *See id.* 526 U.S. 227, 119 S.Ct. at 1220–21. This tradition increases the probability that Congress intended § 111 to create separate offenses, since

> statutory drafting ... occurs against a backdrop ... of traditional treatment of certain categories of important facts.... If a statute is unclear about treating such a fact as element or penalty aggravator, it makes sense to look at what other statutes have done, since Congress is unlikely to intend any radical departures from past practice without making a point of saying so.

*Id.* 526 U.S. 227, 119 S.Ct. at 1216–17.

 Finally, as in *Jones,* we find that interpreting the pertinent provisions of § 111 as delineating the categories of assault as separate offenses is the correct course because it also obviates the need to address the "grave and doubtful constitutional questions," *id.* 526 U.S. 227, 119 S.Ct. at 1222, that would otherwise be presented under the Due Process Clause of the Fourteenth Amendment and the jury guarantee of the Sixth Amendment. Interpreting § 111 as creating only one offense would raise serious constitutional questions because the statute would thereby relegate to the sentencing judge factfinding that is traditionally reserved for the jury and that goes to the elements of the crime. *See id.* 526 U.S. 227, 119 S.Ct. at 1226. For all of these reasons, we construe § 111 as defining three separate offenses, each element of which must be charged in the indictment and proven to the jury beyond a reasonable doubt.

In the first trial, the government charged Chestaro with a violation of 18 U.S.C. § 111(b), implicitly assuming that subsection (b) defines an offense distinct from that defined by § 111(a). The government and Chestaro proceeded throughout the trial under the supposition that the defendant's use of a weapon or infliction of bodily injury was an element of the offense to be proven to the jury rather than a fact to be proven at sentencing for purposes of sentencing enhancement. The district court's charge in the first trial reflected this view of the statute. In light of our holding that § 111(a) and § 111(b) together comprise three separate offenses, we conclude that the government correctly charged Chestaro with a violation of § 111(b), and that the district court's original charge was correct in setting forth the five elements necessary to prove a § 111(b) violation. We also conclude that the district court did not err in delivering to the jury a lesser included offense charge on the "all other" assaults offense defined in § 111(a).

### B. Double Jeopardy Implications of the Jury's Verdict

 Chestaro contends that his retrial violated double jeopardy because the jury at the first trial acquitted him of the charged offense. This argument necessarily fails, however, in light of our holding that § 111 defines three separate offenses. Chestaro was acquitted at the first trial of the offense defined in § 111(b), assault on a federal official with a weapon or with the effect of causing bodily harm. The jury was deadlocked on the lesser included offense of "all other assaults," defined in § 111(a). Chestaro's double jeopardy claim is unavailing because it is well established that a defendant may be retried, with no offense to double jeopardy, after his first trial results in a deadlocked jury. *See Richardson v. United States,* 468 U.S. 317, 324, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); *United States v. Rosa,* 17 F.3d 1531, 1540 (2d Cir.1994). This principle is no different where the jury acquits the defendant of a greater offense but is dead-

locked on a lesser included offense. Of course, "[i]f no instructions are given on lesser included offenses then an acquittal on the crime explicitly charged necessarily implies an acquittal on all lesser offenses included within that charge," *United States v. Gooday*, 714 F.2d 80, 82 (9th Cir.1983) (citing *In re Nielsen*, 131 U.S. 176, 189–90, 9 S.Ct. 672, 33 L.Ed. 118 (1889)), and therefore double jeopardy would bar a second trial on a lesser included offense. But the double jeopardy bar does not apply where the jury has been expressly asked to consider a lesser included offense and states that it is unable to reach a verdict on that offense. *See id.; United States v. Payne*, 832 F.Supp. 594, 597 (E.D.N.Y.1993). *Cf. Edmonds v. United States*, 273 F.2d 108, 113–14 (D.C.Cir. 1959) (defendant as to whom jury expressed no verdict on first-degree murder charge but convicted of second-degree murder charge could be retried on second-degree charge after court of appeals reversed conviction).

■ Nor did the jury's acquittal on the charged offense preclude Chestaro's retrial on the lesser included offense on the basis of "the collateral estoppel component of the Double Jeopardy Clause." *United States v. Medina*, 709 F.2d 155, 156 (2d Cir.1983) (per curiam). The collateral estoppel component precludes the government from retrying a defendant where the jury's verdict in the initial trial necessarily determined in the defendant's favor an issue that would be an element of the offense to be proven at the retrial. *Cf. United States v. Citron*, 853 F.2d 1055, 1058 (2d Cir.1988) ("The doctrine of collateral estoppel, as applied in criminal prosecutions, bars the Government from relitigating an issue decided in a defendant's favor by a valid final judgment."). Here, the jury's verdict at the first trial did not necessarily imply an unanimous finding that an element of the § 111(a) lesser included offense had not been proved. The jury at the first trial acquitted Chestaro of the § 111(b) offense but stated that it

could not agree on the four elements comprising § 111(a).

We note that even if § 111(b) were simply a sentencing enhancement provision, a retrial on § 111(a) would not offend double jeopardy. The defendant's sole remedy would be exactly what occurred in this case: Once the jury had acquitted the defendant of the § 111(b) charge, the ten-year maximum penalty would have been forever out of the case. Even though the district court ultimately did find that Chestaro used a weapon, the district court was limited to the statutory three-year maximum term in imposing sentence.

### III. *Ineffectiveness of Trial Counsel*

■ We turn next to Chestaro's claim that he was deprived of the effective assistance of trial counsel because counsel consented to the district court's declaration of a mistrial without consulting his client. On this record, it is evident that Chestaro cannot meet the first part of the test established in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for a claim of ineffective assistance of counsel. Trial counsel's performance was not deficient. *See id.* To the contrary, the record indicates that trial counsel was aggressive and effective on Chestaro's behalf. As the district court noted in ruling on Chestaro's ineffective assistance claim, trial counsel "provided an able, imaginative and effective defense that, among other things, was responsible for the Court taking the partial verdict that eliminated Chestaro's exposure to the 10–year maximum sentence." *Chestaro*, 17 F.Supp.2d at 244.

■ Nor can Chestaro meet the second half of the *Strickland* test, which requires a defendant to "show that [counsel's] deficient performance prejudiced the defense." 466 U.S. at 687, 104 S.Ct. 2052. There was no prejudice in defense counsel's failure to consult with Chestaro before consenting to the mistrial. Since the jury was deadlocked, the court could declare a mistrial without the consent of either Chesta-

ro or his counsel. "Absent the defendant's consent, a long-standing rule establishes that retrial is barred unless there was a 'manifest necessity' for the mistrial declaration, the classic example of which is a hung jury." *United States v. Rivera*, 802 F.2d 593, 597 (2d Cir.1986); *see also Richardson*, 468 U.S. at 323–26, 104 S.Ct. 3081, 82 L.Ed.2d 242; *Rosa*, 17 F.3d at 1541. Because Chestaro's consent to a mistrial and subsequent retrial was not necessary in these circumstances, counsel's failure to obtain it cannot provide the basis for a claim of ineffective assistance of counsel.

## IV. *Sentencing Claims*

 Chestaro also claims that the district court erred in determining the guideline that governed his sentence. "In reviewing a district court's sentencing decisions on appeal, this Court accepts the findings of fact of the district court unless they are clearly erroneous and gives due deference to the district court's application of the guidelines to the facts." *United States v. Franklyn*, 157 F.3d 90, 97 (2d Cir.1998) (internal quotation marks and citations omitted). The district court found § 2A2.2 of the Guidelines, governing "aggravated assault," applicable to Chestaro's offense. The application notes for this section provide that " '[a]ggravated assault' means a felonious assault that involved (A) a dangerous weapon with intent to do bodily harm (i.e., not merely to frighten), or (B) serious bodily injury, or (C) an intent to commit another felony." U.S.S.G. § 2A2.2 Application Note 1.

The district court determined that § 2A2.2 was the correct guideline—rather than § 2A2.4, governing obstructing or impeding officers—because Chestaro had been convicted of felonious assault. The court found that Chestaro had used a dangerous weapon in committing the assault and that he had an intent to do bodily harm with it. Upon these findings, Chestaro was eligible for sentencing under subsection (a) of § 2A2.2.

The district court's analysis of the defendant's guideline range was a permissible one because, under the Sentencing Guidelines, a district court is directed to take into account both the "offense of conviction," U.S.S.G. § 1B1.2(a), and additional relevant conduct "that occurred during the commission of the offense of conviction" in determining the applicable range, *id.* § 1B1.3(a). *See Watts*, 519 U.S. at 152–53, 117 S.Ct. 633. The district court specifically found by "clear and convincing evidence" that the defendant wielded a dangerous weapon and that he did so with intent to cause bodily harm. This finding was not inconsistent with the jury's finding that this fact had not been proven beyond a reasonable doubt. On the basis of its finding, the sentencing guideline range chosen by the district court was appropriate.

## V. *Defendant's Remaining Claims*

The defendant's remaining claims do not merit separate discussion. They are that trial counsel's consent to a retrial was limited to a misdemeanor charge, and that the second trial, as a matter of law, should have been limited to a misdemeanor charge. Because the defendant's consent to the retrial was not necessary, the first claim is unavailing. There is also no basis for the second claim, since the statute clearly contemplates, as discussed above, an intermediate class of assault that lies between simple assault and assault with a weapon or that causes bodily injury—"all other" assaults—that was not precluded by the acquittal at the first trial of the most serious offense.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.