UNITED STATES of America

v.

Richard PETERSON, a/k/a "Robert James," Defendant.

No. 04 CR 752DC.

United States District Court,
S.D. New York.

Feb. 28, 2005.

David N. Kelley, Esq., United States Attorney for the Southern District of New York by Alexander H. Southwell, Esq., Marc Litt, Esq., Assistant United States Attorneys, New York City, for Plaintiff.

Jeffrey S. Niesen, Esq., Sausalito, CA, for Defendant.

## MEMORANDUM DECISION

CHIN, District Judge.

In this case, defendant Richard Peterson is charged in a three-count indictment with wire fraud, engaging in the business of insurance after having been convicted of a felony involving dishonesty or breach of trust, and money laundering. Peterson moves to dismiss all three counts for lack of venue pursuant to Fed.R.Crim.P. 18 and to dismiss Count Two—the insurance business count—on the grounds that the statute, 18 U.S.C. § 1033(e)(1)(A), is unconstitutionally vague. For the reasons that follow, the motions are denied.

## STATEMENT OF THE CASE

### A. The Facts

The facts alleged in the indictment are assumed to be true for purposes of these motions. *See United States v. Velastegui,* 199 F.3d 590, 592 n. 2 (2d Cir.1999); *United States v. Szur,* No. 97 Cr. 108(JGK), 1998 WL 132942, *9 (S.D.N.Y. Mar. 20, 1998) (motion to dismiss for improper venue). The facts are as follows:

From 2000 through 2003, Peterson held himself out as an insurance broker working with an insurance brokerage company, United Restaurant Services ("URS"). (Indict.¶¶ 1, 6). URS was located primarily in San Francisco and purported to specialize in placing commercial liability insurance for restaurants and bars. (*Id.* ¶ 1).

Peterson's license to engage in the insurance business in California had been

revoked in May 1999. (*Id.* ¶ 2). On November 26, 2001, Peterson was convicted in the United States District Court for the Northern District of California of bankruptcy fraud, a criminal felony involving dishonesty or breach of trust. (*Id.* ¶ 16).

Peterson continued, even after both the revocation of his insurance license and his felony conviction, to issue commercial liability insurance policies through URS. He did so by inducing various entities, in particular restaurants and bars, to buy insurance policies. The policies purportedly were placed with underwriters at Lloyd's of London ("Lloyd's"), but in fact Peterson did not have authorization from Lloyd's to accept insurance policies on its behalf. In addition, he collected premium payments for the policies and, instead of holding the premiums in trust for Lloyd's, he used the funds for personal expenses. (*Id.* ¶¶ 8, 9, 10).

In furtherance of his scheme to defraud, Peterson made or caused to be made numerous telephone calls and sent numerous faxes in interstate commerce to various insurance agents throughout the United States, seeking to induce them to purchase commercial liability insurance policies through URS. These telephone calls included at least one from California to Surplus Lines, Inc. ("Surplus Lines"), an insurance brokerage business in New York, New York. (*Id.* ¶¶ 3, 13, 14).

From August 2002 through May 2003, Peterson directed an individual to deposit approximately $92,000 worth of checks, constituting proceeds from the insurance scheme, into a bank account located in Grand Cayman Island, British West Indies. (*Id.* ¶ 18). Although the indictment does not so allege, the Government represents that it will prove at trial that the checks in question were cleared through New York banks before the funds were sent to Grand Cayman Island. (Gov't Mem. at 10).

## B. *Prior Proceedings*

Peterson was indicted in this case on July 28, 2004. Count One charges Peterson with wire fraud in violation of 18 U.S.C. § 1343; it alleges that he made and caused to be made telephone calls and facsimile transmissions in interstate commerce in furtherance of a scheme to induce entities to purchase fraudulently issued commercial liability insurance policies. Count Two charges Peterson with engaging in the insurance business after a felony conviction in violation of 18 U.S.C. § 1033(e)(1)(A); it alleges that after Peterson was convicted of bankruptcy fraud in November 2001, he brokered the sale of commercial liability insurance policies purportedly placed with Lloyd's. Count Three charges Peterson with money laundering in violation of 18 U.S.C. § 1956(a)(2)(B)(i); it alleges that he directed, from California, an individual to transmit $92,000 in proceeds from the insurance fraud scheme into a bank account in Grand Cayman Island, to conceal the nature, source, and ownership of the funds. The indictment alleges, with respect to each count, that venue in the Southern District of New York is proper. (Indict.¶¶ 14, 16, 18).

On August 9, 2004, Peterson moved pursuant to Fed.R.Crim.P. 21(b) to transfer this case to the United States District Court for the Northern District of California. On September 9, 2004, I denied the motion, ruling from the bench. Although the Government had conceded that much of the alleged criminal activity had occurred in California and Arizona, there were a number of "significant" New York contacts: there were meetings here; representatives of the Lloyd's corporation who would be witnesses at trial are located here; Surplus Lines and another company, Heritage, Inc., purported agents of Lloyd's, were both based in New York;

victims located outside New York were encouraged to contact entities in New York for "confirmation" that they were getting Lloyd's policies; certain checks were cleared through banks in New York; and the investigation was conducted by the U.S. Attorney's Office and Postal Service investigators in New York. (9/9/04 Tr. 4–11).

On January 3, 2005, Peterson filed five additional motions, including the two venue motions (one addressing Count One and one addressing Counts Two and Three) and the vagueness motion that are the subject of this decision. Two additional motions—to bifurcate the forfeiture aspects of the case and to compel discovery—were disposed of from the bench on February 18, 2005. I reserved decision on the venue and vagueness motions and I turn to them now.

### DISCUSSION

I address first the two venue motions and second the vagueness motion.

### A. *Venue*

#### 1. *Applicable Law*

Rule 18 of the Federal Rules of Criminal Procedure provides that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed.R.Crim.P. 18. The requirement that a defendant be prosecuted in "a district where the offense was committed" is drawn from two provisions of the Constitution. Article III, section 2 provides that "[t]he trial of all crimes ... shall be held in the State where the said Crimes shall have been committed." U.S. Const. Art. III, § 2, cl. 3. In addition, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district

wherein the crime shall have been committed." U.S. Const. amend. VI.

Where a crime is not one that consists of a single act but "spans space or time," venue may be proper in any district in which the " 'offense was begun, continued, or completed.' " *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir.1989) (quoting 18 U.S.C. § 3237(a)); *see also United States v. Reed*, 773 F.2d 477, 480 (2d Cir.1985) ("where the acts constituting the crime and the nature of the crime charged implicate more than one location, the constitution does not command a single exclusive venue"). The Second Circuit has applied a "substantial contacts" analysis to determine where an offense was committed—looking at the site of the defendant's acts, the elements and nature of the crime, the locus of the effects of the crime, and the suitability of each district for accurate factfinding. *Beech–Nut*, 871 F.2d at 1188–89; *see also United States v. Rodriguez–Moreno*, 526 U.S. 275, 279, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999) (district court "must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts"); *United States v. Kim*, 246 F.3d 186, 191 (2d Cir. 2001).

The Government bears the burden of proving, by a preponderance of the evidence, that venue exists. *See, e.g., United States v. Naranjo*, 14 F.3d 145, 146 (2d Cir.1994). Where there is more than one count charged in an indictment, the Government must prove venue with respect to each count. *Beech–Nut*, 871 F.2d at 1188. Where venue is challenged on a pre-trial motion to dismiss, the Government's burden is limited to showing that the indictment alleges facts sufficient to support venue. *United States v. Szur*, 1998 WL 132942, at *9; *see United States*

v. *Korolkov,* 870 F.Supp. 60, 63–64 (S.D.N.Y.1994) (where indictment alleges venue, objection to venue raises factual issue to be resolved at trial).

### 2. *Application*

■ Here, Peterson's motion must be denied, as to all three counts. First, the indictment alleges, with respect to each count, that the criminal activity occurred "in the Southern District of New York and elsewhere." (Indict.¶¶ 14, 16, 18). Second, the indictment contains more than just the conclusory allegation of the existence of venue; it also contains allegations of specific acts occurring in the Southern District of New York, including, for example, the use of two insurance brokerage companies located in New York, Surplus Lines and Heritage, that were involved in the alleged scheme; the use of policies purportedly issued by Lloyd's, which had representatives in New York; the placement of telephone calls or transmission of facsimiles into New York in furtherance of the scheme;[1] and an attempt to conceal evidence from a grand jury in New York. (*Id.* ¶¶ 3, 4, 5, 8, 9, 10, 13, 14, 16, 18). Third, the Government has represented that it will be able to prove at trial additional facts not specifically asserted in the indictment that also support the conclusion that venue is proper in this District. (*See* Gov't Mem. at 9–11).

Finally, in the context of this case, all three crimes alleged are continuing offenses that involved conduct in New York and elsewhere. Wire fraud clearly is a continuing offense. *See, e.g., United States v. Kim,* 246 F.3d at 192 (holding that telephone calls and telexes to and from Southern District of New York were sufficient to support venue for wire fraud, even though defendant did not personally send them). The crime of engaging in the insurance business following a felony conviction likewise is a crime that "spans space and time," and here Peterson is alleged to have conducted the business of insurance over a period of time, with actions occurring in and having an effect on a number of jurisdictions. The money laundering charge also involves, in the context alleged here, a continuing offense, as the Government alleges that Peterson caused illegal proceeds of his insurance fraud scheme to be cleared through New York for transmission to a bank account in the Cayman Islands. *See United States v. Cabrales,* 524 U.S. 1, 7, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998) ("Money laundering, the Court of Appeals acknowledged, arguably might rank as a 'continuing offense,' triable in more than one place, if the launderer acquired the funds in one district and transported them into another.") (citation omitted). All three of these offenses alleged involved some conduct in New York, the effects of the conduct are felt here (as well as in California and elsewhere), and this Court certainly is a suitable forum for accurate fact-finding.

The venue motions are denied.

### B. *Vagueness*

#### 1. *Applicable Law*

■■ A statute defining criminal conduct is void for vagueness and violates due process if it does not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *see also Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) ("[T]he

---

1. *See, e.g., United States v. Naranjo,* 14 F.3d at 147 (holding in narcotics conspiracy case that "phone calls from one district into another can establish venue in the latter district so long as they further the ends of the conspiracy").

void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."). A statute is not required to define an offense with "mathematical certainty." *Grayned,* 408 U.S. at 110, 92 S.Ct. 2294. To the contrary, "some ambiguity in a statute's meaning is constitutionally tolerable." *United States v. Chestaro,* 197 F.3d 600, 605 (2d Cir.1999). Because statutes are presumptively valid, they "are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *Parker v. Levy,* 417 U.S. 733, 757, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). To the contrary, a court must resort to "every reasonable construction" to save a statute from unconstitutionality. *United States v. Chestaro,* 197 F.3d at 605 (quoting *Chapman v. United States,* 500 U.S. 453, 464, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991)).

Where First Amendment rights are not implicated, a statute is "assessed for vagueness only 'as applied,' i.e., 'in light of the specific facts of the case at hand and not with regard to the statute's facial validity.'" *United States v. Rybicki,* 354 F.3d 124, 129 (2d Cir.2003) (quoting *United States v. Nadi,* 996 F.2d 548, 550 (2d Cir. 1993)).

### 2. *Application*

Peterson argues that 18 U.S.C. § 1033(e)(1)(A) is void for vagueness. I disagree.

The statute reads in pertinent part as follows:

> Any individual who has been convicted of any criminal felony involving dishonesty or a breach of trust ... and who willfully engages in the business of insurance whose activities affect interstate commerce or participates in such business [commits a crime].

18 U.S.C. § 1033(e)(1)(A).

Peterson argues that § 1033(e)(1)(A) is unconstitutionally vague because the phrases "engages in the business of insurance" and "participates in such business" are not defined and do not give an ordinary person reasonable notice of the conduct that is proscribed. (Def. Vagueness Mem. at 2–3). In particular, he suggests that the statute is unduly broad because its language arguably includes secretaries, mail room personnel, and other individuals not directly engaged in placing insurance. (*Id.*).

Peterson's arguments are rejected. First, the phrase "business of insurance" is defined in the statute. Section 1033(f)(1) defines "business of insurance" to mean "(A) the writing of insurance, or (B) the reinsuring of risks, by an insurer, including all acts necessary or incidental to such writing or reinsuring and the activities of persons who act as, or are, officers, directors, agents, or employees of insurers or who are persons authorized to act on behalf of such persons." 18 U.S.C. § 1033(f)(1). Here, as alleged in the indictment, Peterson falls within the definition as he was a person acting as an officer or agent of an insurance brokerage company who was personally engaged in the writing of insurance.

Second, even assuming there is some ambiguity in the statute because of the breadth of its terms, here the statute must be assessed "as applied," for, as Peterson's counsel conceded at oral argument, First Amendment rights are not implicated. Regardless of whether the statute applies to a secretary or mail room worker, it is not vague as applied in this case, for, as alleged in the indictment, Peterson clearly was engaged in the "business of insurance." Indeed, the indictment alleges that

Peterson "brokered the sale of commercial liability insurance policies purportedly placed with underwriters at Lloyd's." (Indict.¶ 16). It further alleges that Peterson held himself out as an insurance broker, issued insurance policies, and collected insurance premiums. (*Id.* ¶¶ 7–10). These alleged actions surely fall within the scope of the statute and its definition of the term "business of insurance." Peterson knew, or reasonably should have known, that his conduct constituted engaging in the "business of insurance" within the meaning of § 1033(e)(1)(A). The statute gives a person of ordinary intelligence reasonable notice that after a felony conviction involving dishonesty or a breach of trust, he may not broker the sale of or issue insurance policies or hold himself out as an insurance broker or collect insurance premiums.

Alternatively, Peterson asks that the Court "delineate" the Government's burden of proof, and argues that the Government should be required to prove that he had "actual knowledge of the prohibition in the statute" and that he "with the specific intent to violate the statute engaged in 'the insurance business.'" (Def. Vagueness Mem. at 4). This alternative suggestion is rejected as well.

Peterson cites no authority for his request, and on its face the statute does not require the specific intent that Peterson suggests. The statute only requires that a defendant "willfully engages in the business of insurance." 18 U.S.C. § 1033(e)(1)(A). The Government is required to prove only that Peterson acted knowingly and purposefully in engaging in the insurance business following his felony conviction. *See* Leonard B. Sand *et al.,* Modern Federal Jury Instructions, Instr. 3A–3; *see also United States v. George,* 386 F.3d 383, 393 (2d Cir.2004) (noting that "the Second Circuit has held that the term 'willfully' in criminal statutes typically does not require the government to

prove the defendant's specific intent to violate the particular criminal statute in question"). As Judge Learned Hand recognized long ago, "willful" in a criminal statute "means no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law." *Am. Surety Co. of New York v. Sullivan,* 7 F.2d 605, 606 (2d Cir.1925).

Accordingly, Peterson's motion to dismiss Count Two as vague is denied, as is his alternative request with respect to proof of willfulness.

### CONCLUSION

For the foregoing reasons, Peterson's motions are denied in all respects.

SO ORDERED.