**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Christopher WHITE, Defendant–
Appellant.**

No. 99–4578.

United States Court of Appeals,
Fourth Circuit.

Argued: Dec. 5, 2000.

Decided: Feb. 1, 2001.

ARGUED: George Pius Adams, Baltimore, MD, for Appellant. James McCormick Webster, III, Assistant United States Attorney, Baltimore, MD, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Baltimore, MD, for Appellee.

Before WILKINS and NIEMEYER, Circuit Judges, and BOYLE, Chief United States District Judge for the Eastern District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge WILKINS wrote the opinion, in which Judge NIEMEYER and Chief Judge BOYLE joined.

## OPINION

WILKINS, Circuit Judge:

Christopher White appeals his convictions and sentence for drug trafficking. White argues, *inter alia*, that counsel for the Government committed prosecutorial misconduct by withholding material exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny and by presenting perjured testimony at sentencing. We reject these contentions and White's other challenges. In supplemental briefing, White raises the additional claim that his 360–month sentence, imposed pursuant to the sentencing guidelines, is invalid in light of the recent Supreme Court decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We conclude that even if the sentence imposed by the district court is plainly erroneous, the error did not affect White's substantial rights. Accordingly, we affirm as to this contention as well.

### I.

White participated in a large-scale narcotics conspiracy that operated in the Reservoir Hill area of Baltimore, Maryland. White was a member of the conspiracy from 1994 until his arrest in 1998, during which time he sold drugs, acted as a lookout, and performed other functions in furtherance of the conspiracy. Law enforcement officers observed White engaging in drug sales on numerous occasions. Most of these sales took place near the intersection of Lakeview and Whitelock Streets; however, White was also observed engaging in the sale of narcotics at a nearby location on Bloom Street.

▮ Based on evidence of these activities, White was charged with, and convicted of, conspiracy to possess with the intent to distribute and to distribute heroin, cocaine, and cocaine base, *see* 21 U.S.C.A. § 846 (West 1999) (Count One), and possession with the intent to distribute and distribution of cocaine, *see* 21 U.S.C.A. § 841(a) (West 1999) (Count Two). He now appeals, raising numerous challenges to his convictions and sentence. We discuss below White's claims related to the grand jury testimony of two cooperating witnesses and his challenge to his sentence under *Apprendi*. We have carefully reviewed the remainder of White's claims and determined them to be without merit.[1] Accordingly, we will not discuss them further.

### II.

We turn first to White's claims concerning the grand jury testimony of Ralph Cannady and Gregory Hudson. Initially, White contends that the Government violated *Brady v. Maryland* by failing to provide him with transcripts of Cannady's and Hudson's testimony. White also maintains that the Government suborned perjury by allowing a Government witness to mischaracterize Cannady's and Hudson's testimony.

### A.

▮ Suppression by the Government of evidence favorable to the defense that is material to the outcome of a trial or sen-

---

1. We express no view regarding the merits of White's claims that his trial counsel was constitutionally deficient. Because the record does not conclusively demonstrate that White's trial counsel was ineffective, these claims should be raised in a separate proceeding pursuant to 28 U.S.C.A. § 2255 (West Supp.2000). *See United States v. King*, 119 F.3d 290, 295 (4th Cir.1997).

tencing proceeding violates due process, irrespective of the motive of the prosecutor. *See Brady*, 373 U.S. at 87, 83 S.Ct. 1194. Undisclosed evidence is material when its cumulative effect is such that " 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Kyles v. Whitley*, 514 U.S. 419, 433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J.)); *see id.* at 436–37, 115 S.Ct. 1555 (explaining that "suppressed evidence [must be] considered collectively, not item by item"). A "reasonable probability" is one sufficient to undermine confidence in the outcome. *See id.* at 434, 115 S.Ct. 1555.

■ With these principles in mind, we turn to an examination of the grand jury testimony of Ralph Cannady, which White asserts contained materially exculpatory information.[2] In July 1998, Cannady testified that the conspiracy "split" approximately five years prior to his testimony and that White established his own narcotics-dealing operation at Bloom Street. J.A. 81. Although his brief is not clear, White appears to argue that timely disclosure of this aspect of Cannady's testimony would have allowed White to present a defense that, although he was a drug dealer, he was not part of the narcotics conspiracy alleged by the Government.[3] In light of the overwhelming evidence that White was involved in narcotics sales at Lakeview and Whitelock following the "split" alleged by Cannady, there is no reasonable probability that a defense

based upon Cannady's grand jury testimony would have been successful.

## B.

■ Next, White asserts that the Government suborned perjury by Trooper George Cunningham of the Maryland State Police. During the sentencing hearing, Trooper Cunningham testified regarding drug quantity. His testimony was based upon surveillance of narcotics sales during the investigation of the conspiracy; interviews with people who purchased cocaine and heroin from the conspiracy; interviews with cooperating witnesses, including Cannady and Hudson; and the grand jury testimony of Cannady and Hudson. White argues that Trooper Cunningham substantively misstated the grand jury testimony of Cannady and Hudson by asserting that those witnesses divulged that the conspirators sold heroin in "regular" and "jumbo" capsules, respectively containing one tenth of a gram and one quarter of a gram of heroin. White further asserts that the Government engaged in prosecutorial misconduct when it failed to correct these misstatements.

■ A conviction acquired through the knowing use of perjured testimony by the prosecution violates due process. *See Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). This is true regardless of whether the prosecution solicited testimony it knew to be false or simply allowed such testimony to pass uncorrected. *See Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue*, 360 U.S. at 269, 79 S.Ct. 1173. The knowing use of perjured testimony constitutes a due process viola-

---

2. Because Hudson's grand jury testimony took place after White's trial, it cannot be said that the Government's failure to disclose it constituted suppression of evidence that may have been material to White's guilt or innocence. And, although the *Brady* duty extends to evidence that is material to sentencing, *see Brady*, 373 U.S. at 87, 83 S.Ct. 1194, White does not contend that Hudson's testimony was exculpatory as to his sentence. Rather,

he maintains that Trooper Cunningham committed perjury by mischaracterizing Hudson's testimony. This claim is addressed below in Part II.B.

3. The defense actually presented by White was that he was not a drug dealer at all. Cannady's testimony was not exculpatory as to this defense.

tion when " 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *Kyles,* 514 U.S. at 433 n. 7, 115 S.Ct. 1555 (quoting *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).

We conclude that no due process violation occurred here. White does not assert that Trooper Cunningham's testimony concerning the quantity of heroin in the capsules sold by the conspiracy was inaccurate; he merely asserts that this information did not come from Cannady or Hudson. However, Trooper Cunningham's testimony during the sentencing hearing, as noted above, was based upon many sources in addition to Cannady's and Hudson's grand jury testimony. And, Trooper Cunningham's testimony regarding the size of heroin capsules sold in the Baltimore area was substantially confirmed by testimony from Agent Kim Thomson with the Drug Enforcement Administration. Under these circumstances, there simply is no reasonable likelihood that Trooper Cunningham's statements, even if they inaccurately summarized the grand jury testimony of Cannady and Hudson, affected the determination of drug quantity.

## III.

■ During the pendency of this appeal, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). We

granted the parties' motions to file supplemental briefs regarding the possible impact of *Apprendi* on White's sentence. White contends that his 360 month sentence is invalid in light of *Apprendi* because, he maintains, it exceeds the maximum statutory penalty authorized by the jury verdict.[4]

■ Because White failed to raise this argument before the district court, our review is for plain error. *See* Fed. R.Crim.P. 52(b); *United States v. Olano,* 507 U.S. 725, 731–32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In order to establish our authority to notice an error not preserved by a timely objection, White must show that an error occurred, that the error was plain, and that the error affected his substantial rights. *See Olano,* 507 U.S. at 732, 113 S.Ct. 1770; *United States v. Cedelle,* 89 F.3d 181, 184 (4th Cir.1996). Even if White can satisfy these requirements, correction of the error remains within our sound discretion, which we "should not exercise ... unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Olano,* 507 U.S. at 732, 113 S.Ct. 1770 (second alteration in original) (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)); *see United States v. David,* 83 F.3d 638, 641 (4th Cir.1996).

As noted previously, White was convicted of two drug-trafficking offenses: conspiracy to possess with the intent to distribute and to distribute heroin, cocaine, and cocaine base, in violation of 21 U.S.C.A. § 846; and possession with the intent to distribute and distribution of cocaine, in violation of 21 U.S.C.A. § 841(a).[5]

---

**4.** White also maintains that he was entitled to a jury determination of the factors that served to increase his offense level under the Sentencing Guidelines. This court has previously held, however, that the constitutional rule announced in *Apprendi* does not prohibit a district court from finding, by a preponderance of the evidence, facts relevant to the application of the guidelines. *See United States v. Lewis,* 235 F.3d 215, 218–19 (4th Cir.2000);

*United States v. Kinter* 235 F.3d 192, 198–202 (4th Cir.2000). Therefore, White cannot establish plain error on this claim.

**5.** 21 U.S.C.A. § 841(b) sets forth the penalties for both offenses. *See* 21 U.S.C.A. § 846 (providing that "[a]ny person who ... conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the com-

Based on its determination that White should be held accountable for more than 30 kilograms of heroin, the district court concluded that White was subject to a guideline sentencing range of 360 months to life imprisonment. The court imposed concurrent terms of 360 months imprisonment on each count of conviction. *See* 21 U.S.C.A. § 841(b)(1)(A) (West 1999) (providing that violation of § 841(a) involving one kilogram or more of heroin subjects a defendant to a term of imprisonment of "not ... less than 10 years or more than life").

White argues, essentially, that because drug quantity was not charged as an element of the offense and found by the jury beyond a reasonable doubt, the maximum statutory term of imprisonment for each count of conviction is 20 years, or 240 months. *See* 21 U.S .C.A. § 841(b)(1)(C) (West 1999). White's position is supported by decisions from several other circuits.[6] *See United States v. Baltas,* 236 F.3d 27, 40–41 (1st Cir.2001); *United States v. Nance,* 236 F.3d 820 (7th Cir.2000); *United States v. Jones,* 235 F.3d 1231 (10th Cir. Dec.19, 2000); *United States v. Page,* 232 F.3d 536, 543 (6th Cir.2000); *United States v. Nealy,* 232 F.3d 825, 829 (11th Cir.2000); *United States v. Doggett,* 230 F.3d 160, 164–65 (5th Cir.2000); *United States v. Aguayo–Delgado,* 220 F.3d 926, 930 (8th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 600, 148 L.Ed.2d 513 (2000); *see also United States v. Nordby,* 225 F.3d 1053, 1058–59 (9th Cir.2000) (holding that absent a jury finding of drug quantity, statutory maximum term of imprisonment for violation of § 841(a) involving marijuana is five years pursuant to 21 U.S.C.A. § 841(b)(1)(D) (West 1999)). Pursuant to the rationale of these decisions, if a defendant is convicted of a § 841(a) offense involving heroin but the jury makes no finding regarding drug quantity, the maximum statutory penalty for that offense is

240 months. This is so even if the district court determines at sentencing that the defendant should be held accountable for a quantity of narcotics that would justify a more severe statutory penalty. Although the Government concedes here that the maximum statutory penalty for a violation of § 841(a) involving a Schedule I or II substance is 240 months in the absence of a jury finding of drug quantity, we are aware that in another appeal pending before this court the Government has maintained that the statutory maximum penalty for a violation of § 841(a) is always life imprisonment.

We need not decide whether White is correct. Only for purposes of this appeal we assume, *without deciding,* that the sentence imposed by the district court was erroneous. We further assume, *without deciding,* that the error is plain. Nevertheless, we affirm White's sentence because White has not shown that the error affected his substantial rights.

In order to establish that the error affected his substantial rights, White must demonstrate that it was prejudicial, *i.e.,* that it "actually affected the outcome of the proceedings." *United States v. Hastings,* 134 F.3d 235, 240 (4th Cir.1998); *see Olano,* 507 U.S. at 734, 113 S.Ct. 1770. Thus, White must demonstrate that the 360–month sentence imposed by the district court was longer than that to which he would otherwise be subject. We conclude that White cannot make this showing.

In recent times, the federal sentencing process has been altered by the enactment of statutory minimum penalties, increases in statutory maximum penalties, and the introduction of the sentencing guidelines. To a large extent, these competing influences are reconciled by statutes and guideline provisions that recognize the

---

mission of which was the object of the ... conspiracy").

**6.** This court reached a similar holding in *United States v. Angle,* 230 F.3d 113, 123 (4th Cir.2000). However, *Angle* has been vacated and rehearing en banc granted.

preeminent role of statutory maximum and minimum penalties. For example, while a district court may depart below the sentencing range established by the guidelines, such a departure generally may not result in a sentence below the minimum term specified in the offense of conviction. *See* 18 U.S.C.A. § 3553(e) (West 2000) (limiting authority of district court to depart below statutory minimum to cases in which the Government has moved for such a departure on the basis of substantial assistance); *United States v. Patterson,* 38 F.3d 139, 146 n. 8 (4th Cir.1994) (observing that "[t]he district court could have sentenced below the statutory minimum only if this departure was based on the Government's motion for downward departure due to Defendant's substantial assistance"); *cf.* 18 U.S.C.A. § 3553(f) (West 2000) (limiting applicability of statutory minimum penalties for certain drug offenses when specified criteria are met); *U.S. Sentencing Guidelines Manual* § 5C1.2 (1998) (same). Similarly, in the event the guideline sentence for a single count of conviction exceeds the applicable statutory maximum, the statutory maximum becomes the guideline sentence. *See* U.S.S.G. § 5G1.1(a).

In the case of multiple counts of conviction, the guidelines instruct that if the total punishment mandated by the guidelines exceeds the highest statutory maximum, the district court must impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment. *See* U.S.S.G. § 5G1.2(d). For example, suppose a defendant is convicted of three offenses, each with a statutory maximum term of five years (60 months) imprisonment. If the district court determines that the appropriate sentence under the guidelines is 156 months, § 5G1.2(d) requires the imposition of consecutive terms on each count of conviction until the guideline punishment is achieved.

Applying these principles here, it is evident that White's substantial rights were not affected by the imposition of a 360–month term of imprisonment on each count of conviction. Even if White is correct that the maximum penalty for each of his offenses was 240 months, the district court would still have been obligated to calculate a guideline sentence by making a finding regarding the quantity of narcotics attributable to White.[7] And, in light of its determination that White's total punishment under the guidelines should be 360 months imprisonment, the district court would have been obligated to reach that total sentence by imposing a term of imprisonment of 240 months or less on each count of conviction and ordering those terms to be served consecutively to achieve the total punishment mandated by the guidelines. *See id.; Page,* 232 F.3d at 544–45.

## IV.

For the reasons set forth above, we affirm White's convictions and sentence.

*AFFIRMED.*

---

7. In determining the applicable guideline range, the court of course would have followed the normal procedures for determining the guideline range in a multiple-conviction case, including application of the pertinent grouping rules. *See* U.S.S.G. §§ 3D1.2(d), 3D1.3(b); *see also* U.S.S.G. Ch.3, Pt.D, illustration 3.