

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-6-2001

# United States v. McCulligan

Precedential or Non-Precedential:

Docket 00-2562

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"United States v. McCulligan" (2001). *2001 Decisions.* Paper 148.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/148

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 6, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2562

UNITED STATES OF AMERICA

v.

ROBERT MCCULLIGAN
        Appellant

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
Crim. No. 99-cr-00410
District Judge: The Honorable Edmund V. Ludwig

Argued: April 24, 2001

Before: BARRY, AMBRO, ALDISER T, Circuit Judges

(Filed: July 6, 2001)

        Stephen P. Patrizio, Esquire
        Christopher D. Warren, Esq.
         (Argued)
        Dranoff & Patrizio
        117 South 17 Street
        Architects Building, Suite 1600
        Philadelphia, Pennsylvania 19103

         Attorney for Appellant

          Craig D. Margolis, Esquire (Argued)
          Office of the United States Attorney
          615 Chestnut Street
          Philadelphia, Pennsylvania 19106

           Attorney for Appellee

OPINION OF THE COURT

BARRY, Circuit Judge:

Appellant contends that he was convicted of one crime
but sentenced for another. We agr ee, and will remand for
resentencing.

I.

Several Deputy U.S. Marshals arrived at an apartment
complex in West Norriton, Pennsylvania on June 17, 1999
to arrest Robert McCulligan, who was wanted for a violation
of supervised release. As McCulligan attempted to drive his
vehicle out of an entrance to the complex, Deputies
O'Donnell and Kurtz blocked his path with their vehicle and
ordered him to stop. McCulligan responded by driving
rapidly in reverse. The deputies pursued, and the two
vehicles collided when McCulligan apparently attempted to
turn around. McCulligan later claimed that the deputies
rammed his vehicle; the deputies contended McCulligan
rammed theirs. Either way, the force of the impact locked
the vehicles' front bumpers together at a r oughly
perpendicular angle, preventing McCulligan fr om
proceeding. As the deputies exited their vehicle and Deputy
O'Donnell moved toward the driver's side door of
McCulligan's vehicle, however, McCulligan again put his
vehicle in reverse. Unable to break fr ee, McCulligan's
vehicle began to fish-tail dangerously as its wheels spun;
fortunately, it did not strike either deputy. Deputy Kurtz
approached McCulligan's vehicle, punched out the driver's-
side window with his hand and gun, and order ed
McCulligan to stop. McCulligan surrender ed.

McCulligan was charged with assault on Deputies
O'Donnell and Kurtz under 18 U.S.C. S 111(a), two counts

2

of assault on a federal officer with a deadly or dangerous weapon under 18 U.S.C. S 111(b), and destruction of government property under 18 U.S.C. S 1361. At trial, the government argued that McCulligan purposefully collided with the deputies' vehicle and would have seriously injured Deputy O'Donnell had his vehicle broken fr ee while fish-tailing. The jury, however, found McCulligan guilty only of the S 111(a) assault on Deputy O'Donnell and destruction of government property, a result which, as the District Court remarked, indicated that the jury was "unpersuaded by the government's version of the collision." United States v. McCulligan, No. 99-410-01, slip op. at 4 (E.D. Pa. Nov. 3, 2000).

At sentencing, McCulligan argued that his actions amounted to nothing more than "simple assault" under S 111(a), which carries a maximum prison ter m of one year. Section 111(a) also provides for three years' imprisonment in "all other cases" of assault (hereinafter "non-simple assault").1 The District Court found that "the fish-tailing movements of defendant's car when O'Donnell was standing close by are enough to support an aggravated assault,

_____

1. 18 U.S.C. S 111 states:

        (a) In general. Whoever--

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes
with any [federal officer] while engaged in or on account of the performance of official duties; or

(2) forcibly assaults or intimidates any person who formerly served as a [federal officer] on account of the per formance of official duties during such person's term of service,

        shall, where the acts in violation of this section constitute only
        simple assault, be fined under this title or imprisoned not more
        than one year, or both, and in all other cases, be fined under this
        title or imprisoned not more than three years, or both.

        (b) Enhanced penalty. Whoever, in the commission of any acts
        described in subsection (a), uses a deadly or danger ous weapon
        (including a weapon intended to cause death or danger but that
fails
        to do so by reason of a defective component) or inflicts bodily
injury,
        shall be fined under this title or imprisoned not more than ten
        years, or both.

albeit not necessarily with a deadly or danger ous weapon."
McCulligan, Slip Op. at 13. The District Court then used the
three-year maximum term from the"all other cases"
provision in determining McCulligan's sentencing range
under the Sentencing Guidelines.

McCulligan now appeals the District Court's judgment.
We have jurisdiction under 28 U.S.C. S 1291 and 18 U.S.C.
S 3742(a). We exercise plenary r eview over questions of law
as well as the District Court's application of the Sentencing
Guidelines. United States v. Williams, 235 F.3d 858, 861
(3d Cir. 2000).

II.

The United States Criminal Code describes the two
crimes at issue -- simple assault and "all other cases" of
assault -- in a single statutory subsection, 18 U.S.C.
S 111(a). Under Apprendi v. New Jersey, 530 U.S. 466, 120
S.Ct. 2348 (2000), the fact that various offenses are
grouped together or share a particular label is irrelevant.
Instead, the Apprendi Court held, except for the fact of a
prior conviction, "any fact that increases the penalty for a
crime beyond the prescribed statutory maximum must be
submitted to a jury, and proved beyond a r easonable
doubt." Apprendi, 120 S.Ct. at 2362-63. The relevant
inquiry is whether "the required finding expose[s] the
defendant to a greater punishment than that authorized by
the jury's guilty verdict." Id. at 2365. Because non-simple
assault carries a greater statutory maximum than simple
assault, each element of non-simple assault must be
charged in the indictment and proven to a jury beyond a
reasonable doubt.

The District Court instructed the jurors that they were to
find McCulligan guilty upon proof of thr ee elements: (1)
that he forcibly assaulted the person named in the
indictment, (2) that the victim was a federal officer, and (3)
that McCulligan did the acts charged voluntarily and
intentionally. App. at 768, 771-772. The Court further
instructed the jury that "forcible assault" means "any
deliberate and intentional attempt or threat to inflict
physical injury on another person with force or strength,

4

when the attempt or threat is coupled with an apparent present ability to do so . . . A forcible assault may be committed by a defendant without actually touching, striking or doing bodily harm to the other person . . . ." Id. at 768. The government concedes that whatever fact separates "all other cases" of assault fr om mere "simple assault," the jury was not asked to find it. Appellee's Br. at 41-42. Any sentence greater than one year on the S 111 count thus represents error under Apprendi.

Preliminarily, we must respond to the government's contention that because McCulligan failed to object to any Apprendi error either at trial or during sentencing, we review only for plain error. W e surely would not have expected McCulligan to object to the "simple assault" jury charge at issue in this case; he had no r esponsibility and certainly no incentive to point out that the gover nment could have attempted to win a conviction on some gr eater offense. United States v. Candelario, 240 F.3d 1300, 1305 (11th Cir. 2001). No error occurr ed from McCulligan's perspective until the sentencing stage, when, although not explicitly invoking Apprendi, he in fact objected to the Court's determination that his offense of conviction was something greater than simple assault.2

_____

2. McCulligan's attorney argued at sentencing that the jury convicted his client of simple assault and that he could not be sentenced for anything more, as this colloquy illustrates:

> [Counsel]: I don't believe that the Court can impose a sentence of more than one year in this case, that being the statutory maximum of a finding based upon a simple assault.
> . . .
>
> The Court: Well, wait a moment. Wasn't there a guilty verdict as to an assault on a federal officer?
>
> [Counsel]: There was, your honor .
>
> The Court: And you're saying the maximum statutory sentence is one year?
>
> [Counsel]: If this Court finds that it was a simple assault as opposed to an aggravated assault it's a one-year maximum, statutory maximum . . . .

To preserve the right to appeal a district court ruling, "it is sufficient that a party, at the time the ruling. . . is made or sought, makes known to the court the action which that party desires the court to take . . . and the grounds therefor." Fed. R. Crim. P. 51. McCulligan did not mention Apprendi, but, rather, ar gued that the facts and the jury's findings fit the definition of one crime and not another, and that he should be sentenced under the correct statutory maximum. When one contends that he or she is about to be sentenced for a crime of which he or she was not convicted -- an error by any standard-- intonation of the word "Apprendi" is unnecessary to present the issue squarely to the court. In any event, as our analysis below will indicate, McCulligan's sentence would not survive either harmless error or plain err or review.

The government argues that the District Court's error in making a determination that should have gone to the jury is not reversible for two reasons. First, the government contends that McCulligan's offense of conviction actually was non-simple assault despite the jury char ge and that the failure to properly instruct the jury was harmless error under the Supreme Court's decisions in Johnson v. United States, 520 U.S. 461 (1997) and Neder v. United States, 527 U.S. 1 (1999). Second, the government ar gues that even if McCulligan was convicted of the lesser assault crime, the District Court's contrary findings of fact at sentencing did not implicate Apprendi. Although the Court's finding of "aggravated assault" raised McCulligan's sentencing range beyond the one-year maximum for his simple assault count, the argument goes, his actual sentence did not fall outside the ten-year maximum he faced on the destruction of government property count. We address each argument in turn.

_____

App. at 798-99; see also App. at 822 (McCulligan's attorney stating once again that "the statutory max should be at most one year."). While counsel seems to have assumed that it was the Court's duty to make the simple/non-simple assault determination rather than the jury's, he was clear in stating that the facts pointed to only one resolution.

6

III.

In Neder, the Supreme Court examined whether overwhelming evidence of a particular element of an offense can compensate for a court's failure to submit that element to the jury. The trial court in Neder neglected to instruct the jury in a tax fraud prosecution that conviction required a finding of material falsehood. The defendant was found guilty on the incomplete instructions and appealed. Answering a question it left open in Johnson, the Supreme Court held that non-structural constitutional err ors, including the failure to submit an element of a crime to the jury, are subject to harmless err or review. Neder, 527 U.S. at 8-15.

By invoking Neder, the government necessarily contends that McCulligan was, in fact, "convicted" of non-simple assault despite jury instructions that charged simple assault. See Neder, 527 U.S. at 15 (framing the question as whether a defendant's conviction could "stand" because the error was harmless). Confusion over the actual offense of conviction seems inevitable where a defendant is charged and a jury instructed according to a general statute such as S 111(a) that Apprendi since has shown to encompass the equivalent of multiple crimes rather than a single crime with various sentencing factors. We note that this Court has not yet considered whether Neder applies to a situation where, unlike in Neder itself, the jury instructions properly set out the elements of what is essentially a lesser included offense. We need not unsnarl the intersection of Neder and Apprendi in the present case, however, because we find no evidence that could lead a rational jury to find McCulligan guilty of non-simple assault.

Before a conviction may be sustained despite the omission of an element from the jury instructions, Neder demands a "thorough examination of the r ecord" by the reviewing court:

> If, at the end of that examination, the court cannot
> conclude beyond a reasonable doubt that the jury
> verdict would have been the same absent the err or --
> for example, where the defendant contested the omitted
> element and raised evidence sufficient to support a

7

contrary finding —— it should not find the err or harmless.

Neder, 527 U.S. at 19. To make such a determination here, we must first examine the distinction between the two types of S 111(a) assault, a question of first impression in this Court. Once we understand the definition of non-simple assault, we must search the record for proof "beyond a reasonable doubt" of that more serious offense.

In the federal scheme (at least, post-Appr endi), SS 111(a) and 111(b) create three separate of fenses: simple assaults, other "non-simple" assaults not involving a dangerous weapon or injury, and assaults that involve a danger ous weapon or cause injury. See United States v. Nunez, 180 F.3d 227, 233 (5th Cir. 1999) (noting the three crimes). "Simple" assault is not defined, thus leaving the catch-all category of "other" assaults similarly without clear demarcation. We, therefore, start from the well-established proposition that where Congress fails to specifically define a term, that term should be interpr eted according to its common law definition. Moskal v. United States , 498 U.S. 103, 114 (1990); United States v. Turley, 352 U.S. 407, 411 (1957). If research into the common law yields several competing definitions, courts should look to the r eading that "best accords with the overall purposes of the statute" even if it is the minority view. Moskal, 498 U.S. at 116-17. Furthermore, "Congress' general purpose in enacting a law may prevail over this rule of statutory construction," id. at 117, and a more "generic, contemporary" definition may apply where the traditional definition is out of step with modern criminal justice policy. Taylor v. United States, 495 U.S. 575, 598 (1990). Regarding the statute at issue here, the Supreme Court has also noted that S 111 should be construed "to effectuate the congressional purpose of according maximum protection to federal officers." United States v. Feola, 420 U.S. 671, 684 (1975).

The government states correctly that, at common law, there were no degrees of assault or battery. Rather, "assault" was defined as the "attempt or offer to beat another, without touching him," 3 Blackstone, Commentaries at 120, or the "placing of another in reasonable apprehension of a battery." United States v.

8

Ramirez, 233 F.3d 318, 321–22 (5th Cir. 2000) (citing LaFave & Scott, Substantive Criminal LawS 7.16 (1986)). "Battery" was defined at common law as the unlawful beating of another, including "[t]he least touching of another's person willfully, or in anger." 3 Blackstone, Commentaries at 120. Battery could rise to the crime of mayhem where the defendant caused permanent injury. Id. at 121. Over time, many jurisdictions have come to use the term "assault" to describe both assaults and batteries. Rollin M. Perkins and Ronald N. Boyce, Criminal Law 159–60 (3d ed. 1982); Black's Law Dictionary 114 (6th ed. 1990).

In United States v. Chestaro, 197 F .3d 600 (2d Cir. 1999), the Second Circuit recognized that the undefined term "simple assault" also appears in 18 U.S.C.S 113, "which has been held to `embrace the common law meaning of that term.' " Chestaro, 197 F .3d at 605 (quoting United States v. Stewart, 568 F.2d 501, 504 (6th Cir .1978)); see also United States v. Estrada–Fernandez, 150 F .3d 491, 494 n.1 (5th Cir. 1998); United States v. Juvenile Male, 930 F.2d 727, 728 (9th Cir. 1991). Applying case law interpreting S 113 to similar language in S 111, the Chestar o Court found that "simple assault" is a crime "committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." Id. at 605 (quoting United States v. Johnson, 637 F .2d 1224, 1242 n.26 (9th Cir. 1980)). Expanding further upon this definition, the Second Circuit agreed with the government's position in that case:

> [F]or practical purposes S 111 cr eates three distinct categories of conduct: (1) simple assault, which, in accord with the common-law definition, does not involve touching; (2) "all other cases," meaning assault that does involve contact but does not r esult in bodily injury or involve a weapon; and (3) assaults r esulting in bodily injury or involving a weapon. We think that this is a reasonable construction of the statute, and one that gives effect to every part of it.

9

Chestaro, 197 F.3d at 606 (emphasis added). The Fifth Circuit recently accepted this definition in United States v. Ramirez, 233 F.3d 318 (5th Cir . 2000) (" `[A]ll other cases' refers to those assaults contemplated by the statute which do involve physical contact, but do not involve a deadly weapon or bodily injury."). Under the Chestar o scheme, a defendant whose conduct did not involve actual contact, a weapon, or bodily injury could be convicted only of "simple assault" within the structure of S 111.3

The government contends that the findings in Chestaro and Ramirez, arguably dicta , were incorrect. As did the District Court, the government views "simple assault" through the lens of the Model Penal Code ("MPC"). The MPC essentially defines "simple assault" as attempting to cause or causing injury, and "aggravated assault" as attempting to cause or causing serious injury. MPC S 211.1. The distinction between these two levels of assault under the MPC thus relies not on contact, but on the potential for serious injury. The government notes that the MPC is widely cited by courts around the country for a variety of propositions, including, in a general way in one case, as being useful for interpreting S 111. See United States v. Duran, 96 F.3d 1495, 1509 (D.C.Cir . 1996) (quoting from the MPC with regard to S 111 but not examining the question before this Court).

Contrary to the government's urging, we do not find the MPC to be an authoritative vehicle for interpr eting simple assault and other forms of assault under S 111(a). While modern statutes may present evidence of contemporary definitions Congress had in mind when crafting S 111, the

_____

3. The government argues that some courts have upheld convictions for simple assault in cases that unambiguously included a touching. See, e.g., United States v. Bayes, 210 F .3d 64, 69 (1st Cir. 2000) (nonviolent but sexually offensive groping can be "simple assault" under S 113(a)(5)); United States v. Smith, 812 F.2d 161 (4th Cir. 1987) (upholding conviction for simple assault under S 113(a)(5) on facts including a non-injurious touching). These cases do not necessarily cut against the conclusion in Chestaro. "[T]he fact that the battery is actually committed does not result in a merger therein of the assault; proof of a battery supports a conviction for assault." United States v. Guilbert, 692 F.2d 1340, 1343 (11th Cir. 1982) (citation omitted).

wording of S 111 does not bear out the pr oposition that its drafters envisioned an MPC-like scheme. Congr ess did not choose to use language such as "assault" and"more serious assault," "assault" and "aggravated assault," or "minor assault" and "major assault." Instead, Congress chose the terms "simple assault" and "all other" assaults, which seem to suggest, if not explicitly refer to, the traditional notion of assault as a crime separated from battery accor ding to the presence or absence of touching.

The similar language of 18 U.S.C. S 113, r elied upon in Chestaro, lends support to the conclusion that "simple assault" equates with traditional common-law assault. Specifically, Congress appeared to r ecognize a boundary based on contact in S 113 by dividing assaults involving striking or beating in S 113(a)(4) from"simple assaults" in S 113(a)(5).4 Rather than set up broad categories of assault

_____

4. 18 U.S.C. S 113(a) states:

     (a) Whoever, within the special maritime and territorial jurisdiction
     of the United States, is guilty of an assault shall be punished as
     follows:

     (1) Assault with intent to commit murder , by imprisonment for not
     more than twenty years.

     (2) Assault with intent to commit any felony, except murder or a
     felony under chapter 109A, by a fine under this title or
     imprisonment for not more than ten years, or both.

     (3) Assault with a dangerous weapon, with intent to do bodily harm,
     and without just cause or excuse, by a fine under this title or
     imprisonment for not more than ten years, or both.

     (4) Assault by striking, beating, or wounding, by afine under this
     title or imprisonment for not more than six months, or both.

     (5) Simple assault, by fine under this title or imprisonment for not
     more than six months, or both, or if the victim of the assault is an
     individual who has not attained the age of 16 years, by fine under
     this title or imprisonment for not more than 1 year, or both.

     (6) Assault resulting in serious bodily injury, by a fine under this
     title or imprisonment for not more than ten years, or both.

     (7) Assault resulting in substantial bodily injury to an individual

who has not attained the age of 16 years, by fine under this title or

imprisonment for not more than 5 years, or both.

11

and battery based on the severity of potential injury as in the MPC, the various provisions of S 113 call for harsher punishment for assaults with particular characteristics or results. As the authors of the MPC explained, the lack of intermediate grades of assault and battery at common law led to situations where "attempts to inflict serious bodily injury were not graded . . . at the level that most legislatures thought appropriate." MPCS 211.1, Comment 1(c). Legislatures responded by "cr eat[ing] a range of personal injury offenses focusing upon the means by which the actor caused or threatened injury, the person upon whom the injury or threat was inflicted, and the seriousness of the injury caused or threatened." Id. In effect, the legislatures referr ed to by the MPC -- including, it seems, Congress -- used the presence of striking, weapons, bodily injury, particular intents, and other specific factors as proxies for potential severity. Remove these extra ingredients, and one is left with a definition for "simple assault" that matches the traditional notion of assault as an attempted battery or the placing of one in apprehension of immediate harm -- actions that do not involve contact. We, therefore,find that, under S 111(a), proof of actual contact is required to sustain a conviction for any crime beyond simple assault.

The record contains no evidence of actual contact by McCulligan. Thus, even assuming Neder applies to this case, any "conviction" for non-simple assault cannot be salvaged -- the error would not be har mless. The question remains whether the sentence McCulligan r eceived beyond the statutory maximum for simple assault, his true offense of conviction, may be sustained.

IV.

The government contends that because McCulligan faced a statutory maximum sentence of at least ten years for his destruction of government property conviction, any error in sentencing him beyond the one-year maximum for his simple assault conviction did not affect the outcome of the proceedings. This argument is familiar to readers of post- Apprendi drug cases under 21 U.S.C. S 841. In United States v. Williams, 235 F.3d 858 (3d Cir. 2000), this Court

12

held, as have other Courts of Appeals, that while "the District Court's finding regarding the amount of drugs substantially increased the possible statutory maximum sentence under 21 U.S.C. S 841(b)(1), . . . Apprendi is not applicable [where] the sentence actually imposed [is] well under the original statutory maximum of 20 years." Williams, 235 F.3d at 863.

This case is different from W illiams in that here the government contends the sentence actually imposed was less than the statutory maximum of a separate count of conviction. Although we need not decide the issue here, the argument that mistakes in determining the sentence on one count may be ignored so long as a greater sentence might have been imposed on another count seems to be for eclosed by Apprendi itself:

> [T]he State has argued that even without the trial judge's finding of racial bias, the judge could have imposed consecutive sentences on counts 3 and 18 that would have produced the 12-year ter m of imprisonment that Apprendi received; Appr endi's actual sentence was thus within the range authorized by statute for the three offenses to which he pleaded guilty. . . . The constitutional question, however, is whether the 12-year sentence imposed on count 18 was permissible, given that it was above the 10-year maximum for the offense charged in that count. The finding is legally significant because it incr eased -- indeed, it doubled -- the maximum range within which the judge could exercise his discretion, converting what otherwise was a maximum 10-year sentence on that count into a minimum sentence. The sentences on counts 3 and 22 have no more relevance to our disposition than the dismissal of the remaining counts.

Apprendi, 120 S.Ct. at 2354 (emphasis added). The Tenth Circuit recently cited this language in a S 841 drug case in which the government argued that a 30-year sentence should not implicate Apprendi wher e the defendant was convicted of two counts, each with a 20-year maximum, because the sentencing court could have run the sentences consecutively to achieve the 30-year total. United States v. Jones, 235 F.3d 1231 (10th Cir. 2000). The Jones Court

13

responded that the proper concern was "the legality of the sentences actually imposed, regardless of whether in the aggregate they are less severe than the sentences that could have been imposed. We will not per mit our result to be guided by idle speculation as to the sentence that might be imposed by the district court on remand." Jones, 235 F.3d at 1238.

The government argues that we need not engage in such "idle speculation" where the sentence necessarily would be the same on remand by operation of U.S.S.G.S 5G1.2(d). Section 5G1.2(d) states, in relevant part:

> [I]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment [as determined under the Guidelines], then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total [Guidelines] punishment.

S 5G1.2(d). The government presses on us several cases in which Courts of Appeals have let stand sentences that, even absent error, would have been the same as those which were imposed. See, e.g., United States v. Page, 232 F.3d 536, 544-45 (6th Cir. 2000); United States v. Sturgis, 238 F.3d 956, 960-61 (8th Cir. 2001); United States v. White, 238 F.3d 537, 543 (4th Cir . 2001).

This case, however, is distinguishable fr om each of those cases because of the simple fact that McCulligan's sentence would not have been the same absent the trial court's error, regardless of S 5G1.2(d). The sentencing courts in Page, Sturgis, and White each made a drug quantity determination, which, as noted above, constitutes a permissible exercise of discretion where the finding of fact alters the Guidelines calculation but does not r esult in a sentence exceeding the statutory maximum. Her e, the so-called "finding of fact" that increased McCulligan's Guideline range did not involve some variable such as drug quantity, but the offense of conviction itself. The District Court erroneously found that McCulligan had been convicted of a S 111(a) non-simple assault, which is punishable by a term of imprisonment exceeding one year

14

and thus qualifies as a "crime of violence" under U.S.S.G.
S 4B1.2. By operation of the career of fender table at
U.S.S.G. S 4B1.1, this finding increased McCulligan's
criminal history category to VI. Given that McCulligan
actually was convicted of simple assault, which by virtue of
its one-year statutory maximum does not qualify as a crime
of violence, the District Court should have used a criminal
history category of V.5 This correct application of the
Guidelines would have led to a shorter total punishment
range; thus, the reasoning of Page Stur gis, and White along
with the language of S 5G1.2(d) upon which they are based
does not apply.

The government contends that a court may deter mine, by
a preponderance of the evidence, the "of fense statutory
maximum" for purposes of sentencing just as it may
determine drug quantity. We disagr ee. Finding drug
quantity based on evidence such as undisputed lab r esults
is far different than pretending the jury convicted a
defendant of one crime when actually he or she was
convicted of another. Moreover, the Guidelines do not
instruct judges to determine the statutory maxima of
offenses. Rather, the Guidelines state that "Offense
Statutory Maximum . . . refers to the maximum term of
imprisonment authorized for the offense of conviction
. . . ." U.S.S.G. S 4B1.1, Application Note 2. The maximum
sentence faced by a defendant convicted of a particular
crime is set by Congress, not "found" by courts. McCulligan
was convicted of simple assault, and the offense statutory
maximum is accordingly read from S 111(a). See United
States v. Rogers, 228 F.3d 1318, 1321-22 (11th Cir. 2000)
(holding that, on remand to correct an Apprendi error, the
base offense level derived from the actual drug quantity

_____

5. The District Court did not examine whether McCulligan's conviction
for destruction of government property under 18 U.S.C. S 1361
constituted a crime of violence. The term "crime of violence" includes
offenses that "involve[ ] conduct that presents a serious potential risk
of
physical injury to another." U.S.S.G.S 4B1.2(a)(2). As the District Court
noted, however, the mix of verdicts on the various counts charged
indicates that the jury did not believe the gover nment's assertion that
McCulligan purposefully rammed into the deputies' vehicle. McCulligan,
Slip. Op. at 4.

15

6. United States v. Doggett, 230 F .3d 160 (5th Cir. 2000), which the government cites in support of its position, is inapposite here. In Doggett, the defendant's base offense level was 34, derived from a permissible court finding of drug quantity. A three-level enhancement was added for two prior felony controlled substance convictions, resulting in a total offense level of 37. By operation of S 4B1.1, the defendant's criminal history category was VI. Doggett, 230 F.3d at 166 n.3. Contrary to the government's argument, the career offender table did not alter the defendant's total offense level in that case. Where the total offense level already equals or exceeds 37, a determination of the offense statutory maximum is unnecessary. See U.S.S.G. S 4B1.1. would not change, but the effect of the "career offender" provision must be re-evaluated in light of the lower maximum sentence allowed under the offense of conviction).6

While, even after Apprendi, a sentencing court may make certain factual determinations as it calculates the sentence under the Guidelines, a defendant cannot be convicted of one crime yet sentenced under the Guidelines as though he or she were convicted of some other crime. United States v. Knobloch, 131 F.3d 366, 373 (3d Cir . 1997)(finding that error in the application of the Guidelines af fected the defendant's "substantial right to suffer no greater an imposition on his liberty than the Guidelines allow."). We hold that the District Court, operating without a clear definition of "simple assault," erred in finding McCulligan's statutory maximum on the S 111 count to be mor e than one year.

V.

The jury charge and facts of this case both point to a conviction for simple assault under S 111(a). The District Court erroneously determined instead that McCulligan was convicted under the "all other" assaults pr ovision, and this error led to a misapplication of the Guidelines. We will affirm the conviction but remand for r esentencing.

16

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit