[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 17, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13429
Non-Argument Calendar
_____

D. C. Docket No. 05-20877-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OSCAR MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 17, 2007)**

Before BIRCH, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Defendant Oscar Martinez appeals his conviction for forcibly assaulting a federal officer, in violation of 18 U.S.C. § 111(a)(1).  Martinez also appeals the restitution order in his sentence.  After review, we affirm.

## I.  BACKGROUND

Defendant Martinez is a prisoner at the Federal Detention Center ("FDC") in Miami, Florida.  A grand jury indicted Martinez for forcibly assaulting a correctional officer at the FDC by striking the officer's face and body with a liquid that was or appeared to be urine, in violation of 18 U.S.C. § 111(a)(1).

### A.    Trial

At trial, the government called Officer Jorge Giraldo, an FDC Miami corrections officer.  Giraldo described the cells in the Special Handling Unit ("SHU"), which had a door with a window and a food slot wide enough to put hands through.  Giraldo testified that, on October 25, 2002, he and Officer Daniel Parodi were bringing linens to the SHU cells when Defendant Martinez, who was alone in his cell, requested a towel.  As Giraldo turned to get the towel, he heard a commotion and Defendant Martinez yelling, "I got you motherfucker."  Giraldo saw Martinez standing with his hands outside the food slot, spraying a liquid all over Parodi.  The liquid was in a bottle of VO5.

Giraldo pushed Martinez's hands back into the cell and closed the food slot.

2

A small amount of the liquid also got on Giraldo's shirt. Giraldo thought the liquid was urine because of its smell and because he, after closing the food slot, saw Martinez urinate into another bottle and say, "I got more for you." After the incident, Defendant Martinez apologized to Giraldo for getting urine on him, stating that the urine was not meant for him. Apparently, the urine was meant for only Parodi, who was sprayed first.

On cross-examination, Giraldo stated that all areas of the SHU were within observation of cameras, which were movable. However, Giraldo did not know if the cameras were turned on or whether, on the date of the incident, they were facing the cell doors. Giraldo admitted that he did not know whether the incident had been videotaped.

The government also called Officer Parodi to testify. According to Parodi, Martinez was angry with him on the day of the incident because Martinez blamed Parodi for losing his position as an orderly, which had given Martinez special privileges. Parodi asked Giraldo to assist him with the linen exchange at Martinez's cell because he knew Martinez was angry with him and Parodi did not want problems. As Parodi and Giraldo began to exchange Martinez's linens, Defendant Martinez squeezed the liquid contents of a bottle at Parodi. The liquid, which smelled like urine, covered Parodi's entire chest and got in his mouth, nose

3

and eyes.

After he sprayed Parodi, Defendant Martinez laughed and said, "I finally got you, motherfucker." Martinez then said, "I got more for you, come on in." Parodi saw three bottles of what appeared to be urine in Martinez's cell.

Parodi washed his face, eyes, mouth and chest and went to the FDC Miami doctor. Parodi explained that he was concerned because he did not know if Martinez had a communicable disease. After Parodi was evaluated by medical staff at FDC Miami, he went to a hospital to have a blood check because he did not know Martinez's medical history. Parodi has not experienced any health problems as a result of the incident.

On cross-examination, Parodi testified that cameras were positioned to cover all areas of the SHU, except inside the cells. However, Parodi was not sure whether the cameras were always on or if they were supposed to be on. When asked if an incident such as the one at issue could be on videotape, Parodi responded, "I believe so." Parodi did not know if the incident had been videotaped or if the cameras were connected to a video recording device. The government rested, and Defendant Martinez presented no witnesses.

## B. Closing Arguments

Prior to closing arguments, Defendant Martinez contended that he should be

4

able to argue that the government had failed to produce a videotape of the incident. The district court ruled that Martinez could not make this argument in closing because there was no evidence that the cameras in the SHU could record or were merely for monitoring, or that the cameras had in fact recorded the incident.

## C. Jury Instructions

Prior to trial, the government filed a motion requesting that the district court modify the Eleventh Circuit pattern jury instruction's definition of forcible assault, which addresses cases involving threats or attempts but not any actual physical contact.[1]  The government requested that "forcible assault" be defined as "an assault which results in physical contact, but which does not involve a deadly weapon or bodily harm."

The government also argued that, because § 111 is a general intent statute, the pattern jury instruction's specific intent definition of "willfully" should not

---

[1]Offense Instruction 1.1 of the Eleventh Circuit Pattern Jury Instructions (Criminal) provides that a defendant can be found guilty under § 111(a)(1) if the following facts are proven beyond a reasonable doubt: (1) "[t]hat the Defendant 'forcibly assaulted' the person described in the indictment, as that term is hereinafter defined"; (2) "[t]hat the person assaulted was a Federal officer . . . then engaged in the performance of an official duty, as charged"; and (3) "[t]hat the Defendant acted knowingly and willfully."  Offense Instruction 1.1 further defines "forcible assault" in full as "any willful threat or attempt to inflict serious bodily injury upon someone else, when coupled with an apparent present ability to do so, and includes any intentional display of force that would give a reasonable person cause to expect immediate and serious bodily harm or death even though the threat or attempt is not actually carried out and the victim is not actually injured."

apply. Instead, the government requested that the instruction be modified to state that the government needed to prove that "the act was done voluntarily and intentionally and not because of mistake or accident."

At the close of the evidence, the district court granted the government's requests over Defendant Martinez's objections. After closing arguments, the district court instructed the jurors as the government requested, as follows:

> Title 18, United States Code, Section 111, makes it a federal crime or offense for anybody to forcibly assault a federal officer while the officer is engaged in the performance of official duties.
> You are instructed that a correctional officer is one of the federal officers referred to in that law. A defendant can be found guilty of that offense of assaulting a federal officer only if all the following facts are proved beyond a reasonable doubt:
> First, that the defendant forcibly assaulted the person described in the indictment as that term is hereafter defined;
> Second, that the person assaulted was a federal officer, as described above, then engaged in the performance of an official duty as charged;
> And third, that the defendant acted knowingly and willfully.
> <u>The term forcible assault means an assault which results in physical contact which does not involve a deadly weapon or bodily harm</u>.
> . . . .
> The phrase "knowingly and willfully," as that phrase is used in the indictment or in these instructions, means that the act was done voluntarily and intentionally, and not because of mistake or accident.

(Emphasis added). Martinez renewed his objections to the jury instructions. The district court again overruled his objections. The jury found Martinez guilty.

**D. Sentencing**

6

According to the presentence investigation report ("PSI"), Parodi provided medical bills showing $1,801.63 in losses. Parodi's losses resulted from visits to his physician and the emergency room and lab work for testing of diseases that he could have contracted from Defendant Martinez's actions. The PSI recommended that Martinez pay $1,801.63 in restitution.

At sentencing, Martinez objected, arguing that he should not have to pay for Parodi's measures to ensure that he was not injured. The district court ordered Martinez to pay $1,801.63 in restitution. The district court sentenced Martinez to 36 months' imprisonment, to be served consecutive to the sentence Martinez is currently serving, and one year of supervised release. Martinez filed this appeal.

## II. DISCUSSION

### A. Jury Instructions

Defendant Martinez argues that the district court erred in giving the government's proposed jury instructions on the elements of the offense.[2]

Under 18 U.S.C. § 111(a), a person commits forcible assault if that person forcibly assaults, resists, opposes, impedes, intimidates or interferes with a federal

---

[2]We review the legal correctness of a jury instruction de novo. United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000). District courts have broad discretion in formulating jury instructions, so long as the charge as a whole accurately reflects the law and the facts. Id. We will not reverse a conviction on the basis of a jury charge unless "the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process." Id. (quotation marks and citation omitted).

7

officer in the performance of his official duties.  Section 111 provides for different penalties depending on the severity of the offenses, as follows:

> (a) **In general** -- Whoever –
>
>> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated [as a federal officer] while engaged in or on account of the performance of official duties; . . .
>> . . .
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and, in all other cases, be fined under this title or imprisoned not more than three years, or both.
>
> (b) **Enhanced penalty.** -- Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon . . . or inflicts bodily injury, shall be fined under this title or imprisoned not more than ten years.

18 U.S.C. § 111(a)-(b) (2002).[3]  In sum, § 111(a) establishes these categories of forcible assault, each with its own penalty: (1) "simple assault," punishable by not more than a year of imprisonment; (2) "all other cases" of forcible assault, which are punishable by not more than three years' imprisonment; and (3) "all other cases" of forcible assault where the defendant uses a deadly or dangerous weapon or inflicts bodily injury, which are punishable by not more than ten years'

---

[3]On November 2, 2002, the maximum penalty for "all other cases" of assault was increased to eight years' imprisonment, and the maximum penalty for assaults involving the use of a deadly or dangerous weapon was increased to twenty years' imprisonment.  Federal Judiciary Protection Act of 2002, Pub. L. No. 107-273, § 11008(b), 116 Stat. 1758, 1818 (2002).

imprisonment.[4]

In the statutory language of § 111(a) Congress did not define "simple assault" or the difference between a forcible assault that should be considered a "simple assault" and an "all other cases" forcible assault. However, in a recent § 111(a) case, this Court discussed the difference. See United States v. Fallen, 256 F.3d 1082, 1088 (11th Cir. 2001). In Fallen, this Court first noted that simple assault at common law "is defined as 'a willful attempt to inflict injury upon the person of another, or . . . a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.'"[5] Id. (emphasis added) (alteration in original); see also United States v. Renfro, 620 F.2d 497, 500 (5th Cir. 1980).[6]

---

[4]Most circuits view § 111 as creating three categories of forcible assault. See, e.g., United States v. Hathaway, 318 F.3d 1001, 1008 (10th Cir. 2003); United States v. Campbell, 259 F.3d 293, 296 (4th Cir. 2001); United States v. McCulligan, 256 F.3d 97, 102 (3d Cir. 2001); United States v. Ramirez, 233 F.3d 318, 321 (5th Cir. 2000), overruled on other grounds by United States v. Longoria, 298 F.3d 367, 372 & n.6 (5th Cir. 2000); United States v. Chestaro, 197 F.3d 600, 606 (2d Cir. 1999). One circuit, however, notes that "the conduct prescribed by § 111(b) does not form a third distinct category, but is a subcategory of the 'all other cases' conduct." United States v. Yates, 304 F.3d 818, 823 (8th Cir. 2002). The circuits vary as to whether physical contact is required for the second category of forcible assault. See infra note 7.

[5]Other circuits have also looked to the common law definition to define "simple assault" in § 111(a) cases. See, e.g., Yates, 304 F.3d at 821-22; McCulligan, 256 F.3d at 102; Ramirez, 233 F.3d at 321; Chestaro, 197 F.3d at 605.

[6]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

9

The Fallen Court also said that "all other cases" of forcible assault in §

111(a) "have to be something more, such as a willful attempt or threat to inflict

serious bodily injury, coupled with an apparent present ability, which causes the

intended victim a reasonable apprehension of immediate serious bodily harm or

death." Fallen, 256 F.3d at 1088 (first emphasis added). Fallen involved verbal

threats to shoot two federal officers where there was no physical contact. Id. at

1087-88. The Fallen Court expressly rejected the argument that the second

category of forcible assault must always involve actual physical contact.[7] Id.

Fallen, however, did not address the proper category of a § 111(a) forcible

assault when the assault conduct at issue involves physical contact.[8] Nevertheless,

every circuit to address the question has held that an assault that involves physical

contact falls within the "all other cases" provision of § 111(a) and is not a "simple

assault" under § 111(a). See United States v. Hathaway, 318 F.3d 1001, 1008-09

(10th Cir. 2003) (involving a defendant who pushed a social security

_____

[7]Some circuits have concluded that the second category of forcible assault (i.e., the "all other cases" of forcible assault) requires some touching or physical contact. See, e.g., McCulligan, 256 F.3d at 104 (requiring proof of actual contact to sustain a conviction for a § 111(a) offense beyond simple assault). However, the Eighth Circuit in Yates, 304 F.3d at 822, like this Court in Fallen, has said that actual physical contact is not required in "all other cases" of forcible assault. Rather, the Eighth Circuit concluded that "all other cases" of forcible assault in § 111(a) includes all other assaults that are not within the common law definition of simple assault. Yates, 304 F.3d at 823.

[8]We need not address whether a threat or attempt to throw urine in someone's mouth, nose and eyes constitutes a threat of serious bodily injury because, here, Martinez actually threw the urine, making physical contact with Parodi.

10

administration agent in the chest and grabbed his tie, thereby choking him); United States v. Ramirez, 233 F.3d 318, 321-22 (5th Cir. 2000) (involving a defendant who threw a cup of urine/feces at a correctional office, striking him in the chest and lower body), overruled on other grounds by United States v. Longoria, 298 F.3d 367, 372 & n.6 (5th Cir. 2002) (en banc); United States v. Chestaro, 197 F.3d 600, 605-06 (2d Cir. 1999) (involving a defendant who wielded a boxcutter and struggled with postal police officers); see also United States v. Yates, 304 F.3d 818, 822 (8th Cir. 2002) (involving a defendant who drove a car at United States marshals, but did not make physical contact and limiting "simple assaults" under § 111(a) to assaults without physical contact).

Turning to this case, we first note that the indictment charged that Martinez "knowingly and intentionally did forcibly assault, resist, oppose, impede, intimidate, and interfere with" a federal correctional officer "by physically striking [him] about the face and body with a liquid that was or appeared to be urine" in violation of § 111(a)(1). In other words, Martinez's charged offense involved actual physical contact rather than mere threats or attempts to inflict bodily injury (i.e., "simple assault").[9] Accordingly, we agree with our sister circuits and conclude that Martinez's offense, which involved actual physical contact, falls

---

[9]Because Martinez's offense involved physical contact, rather than threats of serious bodily injury, his reliance on Fallen is misplaced.

11

within the "all other cases" provision of § 111(a) and not within the "simple assault" provision. Furthermore, since minimal contact is sufficient to violate § 111(a), United States v. Hernandez, 921 F.2d 1569, 1577 (11th Cir. 1991), the physical contact need not have resulted in actual bodily injury.

We also reject Martinez's argument that the second category of forcible assault always requires a threat to inflict serious bodily injury. While a threat to inflict serious bodily injury without any actual physical contact is sufficient under Fallen to establish an "all other cases" forcible assault, an assault with actual physical contact is also sufficient to prove an "all other cases" forcible assault.

The pattern jury instruction that Martinez urged the district court to use addresses an "all other cases" forcible assault in which a defendant makes threats or attempts to inflict serious bodily injury but no actual physical contact occurs.[10] That pattern jury instruction was not appropriate in Martinez's particular case because his offense involved actual physical contact rather than threats or attempts. Thus, the district court properly rejected Martinez's request to give that particular pattern jury instruction and instead properly defined a forcible assault in his case as "an assault which results in physical contact which does not involve a deadly weapon or bodily harm." The definition as instructed accurately reflected the

---

[10]See supra note 1.

12

applicable law given the evidence presented in Martinez's case.

Martinez also argues that the district court erred when it defined the phrase "knowingly and willfully" as used in the indictment as "done voluntarily and intentionally, and not because of mistake or accident." Martinez's contention that this instruction modified the offense from a specific intent offense to a general intent offense is without merit and we need not discuss it further. See United States v. Ettinger, 344 F.3d 1149, 1154 (11th Cir. 2003) (recognizing that specific intent is not an element of a § 111 offense).

## B.    Sufficiency of the Evidence

Martinez also argues that the government failed to prove beyond a reasonable doubt that he intended to inflict serious bodily injury to Parodi.[11] This argument hinges on Martinez's argument, which we have already rejected, that an "all other cases" forcible assault requires an attempt or threat to inflict serious bodily injury.[12] As discussed supra, the district court correctly instructed the jury

---

[11]We review the sufficiency of the evidence de novo, viewing the evidence in a light most favorable to the government and making all reasonable inferences and credibility determinations in favor of the government and the jury's verdict. United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005).

[12]We likewise reject Martinez's claim that the government was required to prove that the liquid thrown at Parodi was actually urine. Nonetheless, we note that the government presented evidence that the liquid smelled like urine to Parodi and Giraldo, that Giraldo observed Martinez urinating in another bottle and saying "I got more for you" after spraying the liquid, and that Martinez himself apologized to Giraldo for hitting him with urine.

on the term "forcible assault" under the evidence in this case. Specifically, the district court made it clear that the government needed to prove beyond a reasonable doubt that: (1) Martinez "forcibly assaulted" Parodi by committing an assault that resulted in physical contact, but that did not involve bodily injury or a deadly weapon; (2) that Parodi was a federal officer engaged in the performance of official duties; and (3) that Martinez acted knowingly and willfully, meaning his actions were voluntary and intentional and not the result of mistake or accident.

The government's evidence was sufficient to establish Martinez's guilt. The evidence showed that Martinez sprayed a urine-like liquid through the slot in his cell door; that the stream of liquid made physical contact with Parodi's chest and head, but did not result in serious bodily harm; that, at the time of the incident, Parodi was a correctional officer conducting a linen exchange in the SHU where Martinez was housed; and that Martinez intended the liquid to make contact with Parodi and, indeed, had planned the offense ahead of time. From this evidence, a reasonable jury could conclude that all the elements of a § 111(a) offense were met.

## C. Closing Argument

Martinez contends that the district court abused its discretion when it prohibited him from arguing during closing about the government's failure to

produce a videotape of the incident. Although evidence was presented at trial that video cameras were present in the SHU, there was no evidence that the cameras were connected to a recording device or that a videotape of the incident actually existed. A district court does not abuse its discretion by prohibiting counsel from making arguments that are unsupported by the record. United States v. Hall, 77 F.3d 398, 400 (11th Cir. 1996) (explaining that reversal is warranted "only if counsel is prevented from making all legal arguments supported by the facts").

**D.     Restitution Order**

Finally, Martinez challenges the district court's order requiring Martinez to pay restitution to Parodi for his medical bills.[13]

The Mandatory Victims Restitution Act ("MVRA") applies to a conviction for an offense: (1) that is a crime of violence, which is a crime that has as an element the use, attempted use or threatened use of physical force against the person or property of another; and (2) in which an identifiable victim suffered a physical injury or pecuniary loss. See 18 U.S.C. §§ 16, 3663A(c)(1). The MVRA provides that the restitution order shall require the defendant to pay an amount equal to the cost of necessary medical and related professional services and devices

---

[13]We review a district court's restitution order for an abuse of discretion, but the legality of the order is reviewed de novo. United States v. Yeager, 331 F.3d 1216, 1227 (11th Cir. 2003).

relating to physical, psychiatric and psychological care. 18 U.S.C. § 3663A(b)(2)(A).

Martinez does not dispute that forcible assault is a crime of violence under the MVRA. Rather, Martinez contends that restitution should not be awarded for medical consultations and check-ups for uninjured victims.

The MVRA permits restitution for both physical injury and pecuniary loss. Thus, even though Parodi was not seriously injured by Martinez's assault, Parodi had to expend $1,801.63 in medical tests to make that determination. Some of the urine-like liquid Martinez sprayed on Parodi got in his mouth, nose and eyes, and Parodi did not know Martinez's medical history. Until Parodi had the medical tests performed, he did not know whether he had contracted a communicable disease as a result of Martinez's actions. Therefore, Parodi at a minimum suffered a pecuniary loss under the MVRA. Furthermore, because these medical tests were necessary to rule out serious injury, the district court did not abuse its discretion in ordering Martinez to pay an amount equal to their cost.

**AFFIRMED.**